**BANQUE LIBANAISE POUR LE COMMERCE, Plaintiff–Appellant,**

v.

**Hanna Elias KHREICH, Defendant–Appellee.**

No. 89–1799.

United States Court of Appeals, Fifth Circuit.

Oct. 29, 1990.

Rehearing Denied Dec. 14, 1990.

W. Robert Gray, Ralph C. Perry–Miller, Perry–Miller, Hawkins, Beasley & Gray, Dallas, Tex., for plaintiff-appellant.

Lisa M. Williams, Denise A. Bretting, Dallas, Tex., for defendant-appellee.

Before GOLDBERG, GEE and WILLIAMS, Circuit Judges.

GOLDBERG, Circuit Judge:

Banque Libanaise Pour Le Commerce (France) (the "Bank") is a French banking corporation which operates a branch office in Abu Dhabi, one of the seven emirates comprising the United Arab Emirates ("U.A.E."). The Bank brought suit against Hanna Elias Khreich ("Khreich"), a former resident of Abu Dhabi. Khreich is now a naturalized American citizen and a Texas resident. The Bank seeks to recover 200,000 dirhams it advanced to Khreich pursuant to a written overdraft agreement. In his pleadings Khreich asserted several affirmative defenses, including sham transaction and usury. The jury, applying Texas law, found for Khreich. The district court entered an order for Khreich based solely on the jury's usury finding and the Bank appeals. AFFIRMED.

## FACTS AND PROCEEDINGS BELOW

Khreich operated a successful contracting company in Abu Dhabi from 1953 until 1976. After war broke out between Muslims and Christians in Lebanon, Khreich, a Lebanese Christian, was accused of donating money to the Christians in Lebanon. As a result of this charge, the ruling sheik banished Khreich from the desert emirate.

Following his exile from Abu Dhabi, Khreich moved to England where Abdul Wahab Al Momayez ("Wahab") visited him. Wahab was a contractor in Abu Dhabi with whom Khreich had done business while he was operating his construction company in the emirate. Wahab agreed to pay 3.1 million dirhams for the majority of Khreich's contracting firm's construction equipment which he had left behind in Abu Dhabi. Although Wahab wrote Khreich a check for this equipment, his check repeatedly bounced.

In 1980 Khreich received a special permit from the ruler of Abu Dhabi to return to the emirate to collect debts owed him, including Wahab's debt. Khreich maintains that while he was in Abu Dhabi he was contacted by one Zueni, the manager of the Bank's local branch. Zueni invited Khreich to meet with him at the Bank. In that meeting, Zueni related that Wahab also owed the Bank money, which the Bank could not collect because of Wahab's limited assets. According to Zueni, Wahab was due to collect a large payment in several months, upon completion of certain defense contracts. However, because Wahab could not currently pay his debts he was in danger of being jailed under local law. If the government jailed Wahab, he could not finish the defense contracts and consequently could never repay any of his creditors, including Khreich and the Bank. Zueni said the Bank could not currently lend Wahab any money without exceeding its lending limits.

According to Khreich, Zueni asked Khreich to execute certain documents which would allow the Bank to exceed its lending limits on Wahab's accounts and extend Wahab sufficient funds to pay his current debts. In return Zueni promised Khreich that the Bank, which was to serve as collecting agent for the money the government owed Wahab on the defense contracts, would withhold from those funds an amount sufficient to pay Wahab's debt to Khreich. Khreich maintains that Zueni promised him that he would not have any liability for any funds extended to Wahab on the basis of the documents Khreich executed.

Khreich agreed to execute a signature card, a document entitled "Opening of Account," a document entitled "Advances in Current Account and Loans" (the "Overdraft Agreement"), and a check payable to the order of Wahab in the amount of 300,-000 dirhams. According to Khreich, this check from Khreich to Wahab was in reality a device to allow the Bank to loan Wahab sufficient funds to pay his creditors. The paperwork, however, indicated that Khreich borrowed 300,000 dirhams from the Bank and then gave that sum to Wahab. Zueni told Khreich that the Bank would recover this money by withholding 300,000 dirhams from the funds it received on Wahab's behalf from the government.

Khreich maintains that when he signed the Overdraft Agreement none of the blanks on the agreement were filled in to reflect the terms of the agreement, such as the interest rate. Khreich further denies that there had ever been any agreement between him and the Bank about how to fill in the blanks on the Overdraft Agreement. According to Khreich, no agreement was necessary because the Bank never intended to enforce those documents.

Although the Bank collected the amounts due Wahab under the defense project contracts, the Bank failed to repay Wahab's debt to Khreich from those funds. In addition, the Bank did not withhold the 300,000 dirhams provided to Wahab out of the account opened in Khreich's name. It is uncontroverted, however, that 100,000 of the original 300,000 dirhams provided to Wahab were repaid to the Bank, but the record is unclear as to the source of this repayment. In 1985 the Bank began making demand on Khreich to repay the 200,000 dirhams outstanding on the account, and in July 1986 it filed suit in the northern district of Texas to recover these amounts. Khreich brought his own suit against the Bank in Abu Dhabi, alleging that the Bank had breached its agreement to collect for him Wahab's indebtedness (the "Abu Dhabi Lawsuit").

In 1987 Khreich filed with the district court his motion to dismiss on *forum non*

*conveniens* grounds, arguing among other things that Abu Dhabi law should apply to this lawsuit. Khreich pointed out that a case involving the same parties and the same facts was currently pending in the Abu Dhabi courts. The Bank did not file any response to this motion, and the court below denied it, finding that Khreich's motion did not overcome the strong presumption in favor of the plaintiff's choice of forum.

Prior to the trial of this case, the Abu Dhabi court entered judgment in favor of the Bank (the "Abu Dhabi Judgment"). Following the Abu Dhabi Judgment, the Bank filed a motion for summary judgment asserting that the district court should recognize the Abu Dhabi Judgment as claim preclusive of the instant action. The district court declined to recognize the Abu Dhabi Judgment due to (1) lack of reciprocity, and (2) the fact that Abu Dhabi does not provide procedures compatible with due process of law. At this time the Bank did not provide the district court with any evidence of Abu Dhabi law requiring recognition of foreign judgments. Essentially the same motion was offered later as a motion for directed verdict or a motion for judgment n.o.v. At this stage the Bank did produce some sources of pertinent Abu Dhabi law, including a translation of an Abu Dhabi law providing for the recognition of foreign judgments. The district court nevertheless found sufficient evidence in the record of Abu Dhabi nonreciprocity and questions regarding the fundamental fairness of the Abu Dhabi court system to refuse to recognize the Abu Dhabi Judgment.

This case was tried to a jury in May 1989. By court order, the affirmative defenses submitted to the jury for special verdicts were limited to material alteration of the Overdraft Agreement, unjust enrich-ment, lack of consideration, usury, and sham transaction. Applying Texas law, the jury returned a verdict in favor of Khreich on all five questions. Apparently responding to the Bank's arguments that some of the issues were improperly submitted to the jury, the district court based its judgment in favor of Khreich solely on the usury jury question.

The Bank appeals the district court's adverse judgment on two grounds. First, the Bank contends that the district court erred in refusing to recognize the Abu Dhabi Judgment due to lack of reciprocity and a divergence from American norms of due process. We affirm. Second, the Bank claims the district court erred in applying Texas choice of law rules, resulting in the application of Texas law instead of the law of Abu Dhabi. We do not reach this issue because we find that the Bank failed to meet its burden at trial to prove applicable Abu Dhabi law. Therefore, we affirm.

## DISCUSSION

### I. Recognition of the Abu Dhabi Judgment

■ The Bank argues that the district court erred when it refused to recognize the Abu Dhabi Judgment. The question arises as to whether federal or state law governs this question. Since the jurisdiction of this court is based on diversity of citizenship, we apply Texas law regarding the recognition of foreign country money-judgments. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (In a diversity action, a federal court must apply the law of the forum state.) Courts have frequently held that state law governs the recognition and enforcement of foreign country judgments.[1] *Hunt v. BP Exploration Co. (Libya), Ltd.,* 492

---

1. Some courts have recognized that suits of this kind necessarily involve to some extent the relations between the United States and foreign governments. *Toronto–Dominion Bank v. Hall,* 367 F.Supp. 1009, 1011–12 (E.D.Ark.1973). Commentators have argued that the enforceability of a foreign judgment in United States' courts should therefore be governed by reference to a general rule of federal law. *See, e.g.* Reese, *The Status in This Country of Judgments Rendered Abroad,* 50 Colum.L.Rev. 783, 788 (1950). Nevertheless, courts have concluded that *Erie* governs and therefore the law of the forum applies. *See, e.g. Toronto–Dominion Bank,* 367 F.Supp. at 1011; R. von Mehren, *Enforcement of Foreign Judgments in the United States,* 17 Va.J.Int'l L. 401, 407 (1977).

F.Supp. 885 (N.D.Tex.1980); *see also Somportex, Ltd. v. Philadelphia Chewing Gum Corp.*, 318 F.Supp. 161 (E.D.Pa.1970), *aff'd*, 453 F.2d 435, 440 (3d Cir.1971), *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972).

The Bank argues that the district court abused its discretion when it declined to recognize the Abu Dhabi Judgment, finding that Abu Dhabi does not recognize judgments rendered by Texas courts or other courts of the United States. In Texas the Uniform Foreign Country Money–Judgment Recognition Act (the "Texas Recognition Act") controls this issue. Tex. Civ.Prac. & Rem.Code §§ 36.001–36.008 (Vernon 1986 & Supp.1990). The Texas Recognition Act provides that a foreign country money-judgment which is final, conclusive and enforceable where rendered is enforceable in Texas in the same manner as a judgment of a sister state that is entitled to full faith and credit. § 36.004. Historically foreign country judgments have not been entitled to full faith and credit, but only to comity. *Hilton v. Guyot*, 159 U.S. 113, 163–64, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895); *Schacht v. Schacht*, 435 S.W.2d 197 (Tex.Civ.App.—Dallas 1968, no writ). *See also* Bishop, *Obtaining Recognition and Enforcement of Foreign–Country Judgments in Texas*, Mar. 1982 Tex.B.J. 287 [hereinafter Bishop]. Comity has been defined as the "recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another." *Somportex*, 453 F.2d at 440.

Although comity is not a rule of law, it is more than mere courtesy and accommodation. *Id.* Under the Texas Recognition Act the rules relating to the recognition of foreign country money-judgments are statutory and therefore more predictable.

Section five of the Texas Recognition Act contains mandatory and discretionary grounds for non-recognition of a foreign country money-judgment. The three criteria listed in section 36.005(a) are mandatory in nature.[2] In comparison, a court *need not* recognize a foreign country money-judgment if any of the seven grounds listed in section 36.005(b) are proven.[3]

■ Section five of the Texas Recognition Act specifically provides that a court need not recognize a foreign country money-judgment if it is "established that the foreign country in which the judgment was rendered does not recognize" Texas judgments. Tex.Civ.Prac. & Rem.Code Ann. § 36.005(b)(7). Since the Texas Recognition Act clearly gives judges discretion in deciding whether to refuse to recognize foreign judgments due to lack of reciprocity, the decision not to recognize the Abu Dhabi Judgment can only be set aside upon a clear showing of abuse of that discretion. *Westbrook v. General Tire and Rubber Co.*, 754 F.2d 1233, 1241 (5th Cir.1985).

■ The Bank argues that Khreich should be bound by the Abu Dhabi Judgment because he chose to pursue his claim in that court. In support of this argument,

2. Section 36.005(a) reads as follows:

A foreign country judgment is not conclusive if:
(1) the judgment was rendered under a system that does not provide impartial tribunals or procedures compatible with the requirements of due process law;
(2) the foreign country court did not have personal jurisdiction over the defendant; or
(3) the foreign country court did not have jurisdiction over the subject matter.

3. Section 36.005(b) reads as follows:

A foreign country judgment need not be recognized if:
(1) the defendant in the proceedings in the foreign country did not receive notice of the proceedings in sufficient time to defend;
(2) the judgment was obtained by fraud;

(3) the cause of action on which the judgment is based is repugnant to the public policy of this state;
(4) the judgment conflicts with another final and conclusive judgment;
(5) the proceeding in the foreign country court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court;
(6) in the case of jurisdiction based only on personal service, the foreign country court was a seriously inconvenient forum for the trial of the action; or
(7) it is established that the foreign country in which the judgment was rendered does not recognize judgments rendered in this state that, but for the fact that they are rendered in this state, conform to the definition of "foreign country judgment."

the Bank asserts that the Texas Recognition Act is essentially a codification of the leading Supreme Court decision regarding recognition and enforcement of foreign judgments, *Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895). In *Hilton*, the Supreme Court refused to give conclusive effect to a French judgment. In that case suit was brought in federal court in New York on a judgment rendered against an American citizen by a French court of competent jurisdiction. The Supreme Court held that a foreign judgment would not be given conclusive effect unless the courts of the rendering country would give the same effect to a comparable judgment of an American court. *Hilton*, 159 U.S. at 210, 16 S.Ct. at 139.

Citing dicta in the *Hilton* opinion, the Bank argues that Khreich should be bound by the Abu Dhabi judgment because he sued in an Abu Dhabi court and judgment was rendered in favor of the Bank. *See Hilton*, 16 U.S. at 170, 16 S.Ct. at 146 ("[I]f a[n American] citizen sues a foreigner, and judgment is rendered in favor of the latter, both may be held equally bound."). This argument is unpersuasive for several reasons. First, the reciprocity portion of the *Hilton* decision is essentially no longer binding law. Most decisions since *Hilton* have rejected or ignored the *Hilton* reciprocity requirement. *See, e.g., Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 293 F.Supp. 892 (S.D.N.Y.1968), *modified on other grounds*, 433 F.2d 686 (2d Cir.1970), *cert. denied*, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971); *Johnston v. Compagnie Generale Transatlantique*, 242 N.Y. 381, 152 N.E. 121 (1926). *See also* von Mehren & Patterson, *Recognition and Enforcement of Foreign–Country Judgments in the United States*, 6 Law & Pol'y in Int'l Bus. 37, 46 (1974). Second, the

Bank has not cited any authority, nor has this court been able to locate any, which indicate that the Texas legislature intended to .adopt this exception to the reciprocity requirement.

■ ·At trial Khreich had the burden of proving non-reciprocity. Section five of the Texas Recognition Act provides that a "foreign country judgment need not be recognized." if certain conditions exist. These conditions are phrased as affirmative defenses. Therefore, the burden of non-rec-. ognition rested with Khreich. *Hennessy v. Marshall*, 682 S.W.2d 340, 344 (Tex.App.— Dallas 1984), *disapproved on other grounds, Don Docksteader Motors, Ltd. v. Patal Enters., Ltd.*, 794 S.W.2d 760 (Tex. 1990); *see also* Bishop, *supra*, at 290.

■ Khreich argues that the district court correctly refused to recognize the Abu Dhabi Judgment on the grounds of non-reciprocity.[4] Khreich met his burden of proof by providing the district court with the affidavit of Gary R. Feulner, an American attorney practicing in Abu Dhabi. Feulner testified that he, as well as members of his firm who had practiced in the U.A.E. since 1974, were unaware of any Abu Dhabi courts enforcing United States' judgments. Feulner also pointed out, however, that he was likewise unaware of any actual attempts to enforce such judgments. Based on his experience in neighboring Arabic countries and his experience with the local judicial treatment of foreign choice of law clauses and choice of jurisdiction clauses, Feulner testified that local courts favor resolution of disputes in a local forum and under local law. The Bank attempted to refute this affidavit by providing the court with a translation of Abu Dhabi law relating to the recognition of foreign judgments.[5] This portion of the Abu Dhabi

---

**4.** Khreich also argued that the district court should not recognize the Abu Dhabi judgment because Abu Dhabi procedures do not comport with the requirements of due process of law. Due to our decision on the reciprocity issue, we need not address this issue.

**5.** The Bank attached a translation of Articles (15) and (16) of Law No. 3 of the Year 1970 concerning Civil Courts Procedures of Abu Dhabi Emirate published in the Encyclopedia of

Statutes (Part One—Legislation) 1965–1980. Article (15) and (16) state:

FOREIGN JUDGEMENTS [sic]:

15 Unless the court decides otherwise, any judgement passed by a foreign court and duly attested shall be deemed a valid judgement and shall be binding upon both parties.

16 (1) Any person in whose favour a judgement is passed by a foreign court against a person residing in the region or possessing

Civil Code provides for the recognition of foreign judgments, apparently at the Abu Dhabi court's discretion.

Although the Bank cited the district court to relevant Abu Dhabi law regarding the enforcement of foreign judgments, Feulner's affidavit states that in his experience valid concerns exist whether Abu Dhabi courts would actually exercise their discretion to recognize an American judgment. Feulner indicates that Abu Dhabi courts demonstrate "a certain skepticism towards the unquestioning application of legal principles adopted from the developed Western nations, at least where these appear to work to the disadvantage of local parties." R. at 573–74. Given this evidence, the district court's refusal to recognize the Abu Dhabi Judgment does not constitute an abuse of discretion. Therefore we affirm the district court's refusal to recognize the Abu Dhabi Judgment.

## II. Application of Texas Law

■ The Bank maintains that the district court erred in applying Texas law instead of Abu Dhabi law, claiming the interest charged to Khreich was permissible under Abu Dhabi law. We uphold the district court's decision due to the Bank's failure to adequately prove in the district court the applicable Abu Dhabi law.

■ We affirm the district court's decision because the Bank failed to meet its burden to prove Abu Dhabi law to the district court. If the Bank wanted to rely on Abu Dhabi law, it was obligated to present to the district court clear proof of the relevant Abu Dhabi legal principles. *Symonette Shipyards, Ltd. v. Clark*, 365 F.2d 464, 468 n. 5 (5th Cir.1966), *cert. denied*, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967); *Liechti v. Roche*, 198 F.2d 174, 176 (5th Cir.1952). The only

proof of the applicable law that the Bank presented to the district court was a translation of a portion of an Abu Dhabi statute regarding recognition of foreign judgments, several secondary sources purporting to explain basic Abu Dhabi law and a translation of something entitled "Principles of Proof," which discusses signing a document in blank. The Bank did not attempt to introduce expert testimony or affidavits of lawyers familiar with Abu Dhabi law, stating their opinion as to the application of Abu Dhabi law in the instant case. It was not until the Bank appealed the district court's decision that it produced extensive translations of the relevant Abu Dhabi law and a letter from an Abu Dhabi lawyer explaining the applicable law.

Although the Bank acknowledges in its reply brief that the law it presented at trial may have contained significant shortcomings, it argues that it should be allowed to "flesh out the pertinent provisions of Abu Dhabi law" on appeal to this court. Appellant's Reply Brief at 12. As the Bank correctly points out, a trial court's determination of foreign law is viewed as a ruling on a question of law and therefore is fully reviewable by this court. Fed.R.Civ.P. 44.-1; *First Nat'l City Bank v. Compania De Aguaceros, S.A.*, 398 F.2d 779, 781–82 (5th Cir.1968). Because foreign law is a question of law, the Bank argues that it should be permitted to present new foreign-law materials on appeal.

While it is true that an appellate court is free to review questions of foreign law on appeal, this argument does not, however, negate the Bank's burden of proof of the foreign law at trial. The law clearly states that absent sufficient proof to establish with reasonable certainty the substance of the foreign principles of law, the district court should apply the law of the forum. *Symonette*, 365 F.2d at 468 n. 5; *Seguros*

---

any property therein, may request the courts of the region to execute such judgement.

(2) The courts of the region may not accept any actions arising under the previous clause unless *the treatment accorded by the courts of* the foreign country to the judgements of the region's courts is the same treatment which the region's courts are asked to accord to the judgements of that foreign country.

(3) All procedures for executing the judgements of the foreign courts shall be deemed as though they are procedures for executing the judgements of the region's courts and shall be subject to the provisions of the laws of the region relating to such judgements. R. at 721.

*Tepeyac, S.A., Compania Mexicana v. Bostrom,* 347 F.2d 168, 174–75 n. 3 (5th Cir.1965). In this case, the fact that the Bank provided extensive supplements on appeal, containing translations of Abu Dhabi law and a statement from an Abu Dhabi lawyer explaining applicable law, is further evidence that better evidence could and should have been made available to the district court. The district court should not be asked to decide a case based on incomplete and frequently confusing explanations of foreign law, and the Bank should not be entitled to a second chance to meet his burden of proof on appeal.

It was the Bank's burden to provide the legal pigment and then paint the district court a clear portrait of the relevant Abu Dhabi law. The Bank failed to provide a pallet, a painter with a usable brush, and paint possessing distinct visibility. The resultant picture contains neither abstract nor realistic exposition. Given this state of the art, the district court was well within its discretionary realm to refuse to accept this virtually barren canvas when it was within the Bank's power to present a canvas upon which it had etched a clear and visible statement of the applicable Abu Dhabi law. Therefore we affirm the district court's application of the law of the forum.

CONCLUSION

In view of the Texas Legislature's specific grant of discretion to judges to refuse to recognize a foreign country money-judgment for lack of reciprocity, we find that the district court did not abuse its discretion when it refused to recognize the Abu Dhabi judgment. The district court's decision with respect to its refusal to recognize the Abu Dhabi judgment is AFFIRMED. In addition, because the Bank failed to meet its burden to prove applicable Abu Dhabi law at the trial, we AFFIRM the application of the law of the forum, Texas law.