United States Court of Appeals,
Fifth Circuit.

No. 91–8446.

SUCCESS MOTIVATION INSTITUTE OF JAPAN LTD., et al., Plaintiffs–Appellants,

v.

SUCCESS MOTIVATION INSTITUTE INC., et al., Defendants–Appellees.

July 27, 1992.

Appeal from the United States District Court for the Western District of Texas.

Before WISDOM, REYNALDO R. GARZA, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Plaintiffs-appellants Success Motivation Institute of Japan, Ltd. (SMIJ) and Iris Lombardi, et al. (Lombardi) sued Success Motivation Institute, Inc., et al. (SMI) on several grounds arising out of a purported sale of stock from Lombardi to SMI. The district court granted the defendant's motion for summary judgment based on *res judicata* of a Japanese judgment. Finding the district court erred in applying the *res judicata* rules of the Fifth Circuit, we reverse and remand.

I.

In 1965, Michael Lombardi purchased an exclusive franchise for sale and distribution in Japan of motivational records and literature produced by Success Motivation Institute, Inc., currently called Success Motivation International, Inc., principally owned by Paul J. Meyer (Meyer). Mr. Lombardi formed Success Motivation Institute of Japan (SMIJ) and served as franchisee for Japan until his death in August, 1983.

Mrs. Lombardi assumed operation of SMIJ after her husband's death. Mrs. Lombardi alleges that Meyer pressed her to invest in a real estate project, demanded that the royalties be doubled, threatened to open a competing business, demanded that territories be transferred to SMI, etc. Lombardi also alleges that she was contacted by Meyer and informed that he would not renew the

SMIJ franchise agreement but would cancel it and would set up a competing company, put out new programs, take SMIJ's agents and distributors, and put Mrs. Lombardi out of business.

Mrs. Lombardi, after meeting with advisors, believed she stood to lose everything and had no alternative other than to sell the company to Meyer. Mrs. Lombardi's advisors negotiated a Buy–Sell Agreement with Meyer and his attorney under which Mrs. Lombardi was to sell her stock in SMIJ and SMI Far East to Meyer. The agreement executed by the parties provided for a purchase price of $2,250,000 with $250,000 in cash to be paid down and the balance to be paid by promissory note for $2,000,000 at 10% interest payable monthly over a term of 15 years. Several additional matters were yet to be worked out, but Mrs. Lombardi signed the agreement on December 29, 1983. Mrs. Lombardi alleges that, as of May, 1984, Meyer made no effort to resolve any of the points he had promised to settle nor had he made the down payment or any of the installment payments called for by the agreement. Mrs. Lombardi physically attempted to take the company back on May 26, 1984.

Meyer sought injunctive relief in Japanese court, which was granted on October 22, 1984, ordering Mrs. Lombardi to cease interference with the business of SMIJ. Meyer then filed suit in Japanese court to have Meyer, Baxter, and Arida confirmed as directors of SMIJ. After a trial, the Tokyo district court confirmed on April 14, 1987, that Meyer, Baxter, and Arida were directors and that Mrs. Lombardi was not. The Japanese court enjoined Mrs. Lombardi from interfering with the operations of SMIJ.

While the Japanese litigation was pending, Mrs. Lombardi and the other plaintiffs initiated this suit in the United States District Court for the Western District of Texas against SMI, Meyer, and Baxter for recision of the buy-sell agreement, restitution of stock ownership in SMIJ, a declaratory judgment, and damages for loss of value in the stock in the business, along with exemplary damages. The plaintiffs based their cause of action on claims of duress, breach of contract, fraud and undue

influence, unconscionability, breach of fiduciary duty, waste and mismanagement, and interference with contractual relations. Defendants counter-claim against Mrs. Lombardi and her advisors for breach of contract, conversion, trespass, and interference with contractual relations.

The defendants argued in the district court that summary judgment was proper because there was no genuine issue of any material facts and that they were entitled to a judgment as a matter of law. They also argued that the prior proceeding in the Japanese court conclusively settled the claims that were at issue in this case and established all material facts in their favor, and that the plaintiff's claims were, therefore, barred by *res judicata* or collateral estoppel. The district court granted the summary judgment motion of defendants without specifying reasons. This court thereafter remanded the case for a more definite statement why the district court granted the motion for summary judgment.

The district court, relying on two previous decisions of the Northern District of Texas, determined that the Fifth Circuit rules of *res judicata* applied and that the Japanese judgment barred further consideration of the plaintiff's claim in its court. Plaintiffs appeal, we reverse and remand.

## II.

On the original appeal from the district court's grant of summary judgment, this court remanded the case because it was "unclear whether the district court based its decision regarding the defendants' summary judgment motion on the absence of any material fact issue in the case or whether the court thought the *res judicata* effect of the Japanese judgment barred the plaintiffs' present claims." The district court clarified its order by providing that it "granted Defendants' motion for summary judgment on the basis that the Japanese judgment was *res judicata* and that it precluded further litigation in this case." The district court relied on *Hunt v. B.P. Exploration Co. (Libya) LTD.,* 492 F.Supp. 885 (N.D.Tex.1980) [*Hunt I* ], and *Hunt v. B.P. Exploration Co. (Libya) LTD.,* 580 F.Supp. 304 (N.D.Tex.1984) [*Hunt II* ], for the proposition that the Fifth Circuit rules of *res*

*judicata* applied and that the Japanese judgment barred further consideration of the plaintiffs' claims in the district court. It is with this holding that plaintiffs take issue.

*Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) governs the recognition of foreign country judgments when jurisdiction is based on diversity. *Banque Libanaise Pour Le Commerce v. Khreich,* 915 F.2d 1000, 1003 (5th Cir.1990). *Erie* applies even though some courts have found that these suits necessarily involve relations between the U.S. and foreign governments, and even though some commentators have argued that the enforceability of these judgments in the courts of the United States should be governed by reference to a general rule of federal law. *Khreich,* 915 F.2d 1003 n. 1.

Here, the district court relied on *Hunt I* and *Hunt II* in determining that the Fifth Circuit rules of *res judicata* should apply. In *Hunt I,* the court recognized that in a diversity action, *Erie* requires that a federal district court to apply the law of the state. *Hunt I,* 492 F.Supp. at 892. The court also recognized that "[i]n *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), the Supreme Court held that *Erie* required the conflict of laws rules to be applied in a federal court must conform to those that would be applied in the court of the forum state." *Hunt I,* 492 F.Supp. at 892. Also, the court recognized that both federal and state courts, in the absence of federal preemptive actions, "have held that state law governs the recognition and enforcement of foreign-country judgments." *Id.* (citations omitted). The court, thereafter, went on to find that although the law of Texas was to govern, Texas law was uncertain and determined that the law of Texas was not the sole reference. *Id.* In *Hunt II,* the district court, although noting that the judgment at issue would be enforceable in the same manner as the judgment of a sister state would be under Texas law, went on to apply the Fifth Circuit rule of *res judicata. Hunt II,* 580 F.Supp. at 310.

Neither *Hunt I* nor *Hunt II* are binding on this court, but we are bound by *Erie, Klaxon,* and

this court's previous opinion in *Khreich*. Therefore, not only the recognition of the foreign country judgment, but also the preclusive effect of that judgment as to this case should be determined under Texas law.

## III.

Appellees argue that Lombardi, et al. may not argue for the first time on appeal that the district court should have applied the law of one jurisdiction rather than the law of another. *Shelak v. White Motor Co.,* 581 F.2d 1155, 1160 (5th Cir.1978), *citing Empire Life Insurance Co. of America v. Valdak Corp.,* 468 F.2d 330, 334 (5th Cir.1972) and *Glona v. American Guaranty & Liability Insurance Co.,* 379 F.2d 545, 546 (5th Cir.1967). However, this issue is not, per se, before this court.[1]

The issue presented is not whether the law of Japan should or should not be applied to determine the preclusive effect of the Japanese judgment. The issue presented is whether the district court should have applied federal or state law. This circuit has previously provided what law is to govern in this instance, *see Khreich, supra,* and the Supreme Court's decision in *Erie* has been with us for over 50 years. The district court in *Hunt I* recognized that both *Erie* and *Klaxon* require it to look to the law of Texas for the recognition of foreign court judgments. *Hunt I,* 492 F.Supp. at 892. It does not appear that the district court even considered Texas law, but instead erroneously relied on *Hunt I* and *Hunt II* for the proposition that the *res judicata* law of the Fifth Circuit applies. Texas law should have been applied and its law should be considered to determine what preclusive effect the Japanese judgment should be given. On remand, the Texas law of *res judicata* and collateral estoppel must be considered to determine what effect the Japanese judgment has on this cause of action.

---

[1]The issue of which state's law should apply as a theory of recovery (*see Shelak, supra,* Texas or Ohio law) is different from whether federal or state law should be applied in a diversity action. "[I]t is not one of the parties seeking to advance a new theory, rather, it is this court, in fulfillment of its duty to apply the *correct* law, that is seeking to put the case back on the right track." *Valdak Corp.,* 468 F.2d at 334 (emphasis original, footnote omitted).

IV.

For the foregoing reasons, the judgment of the district court is REVERSED and REMANDED.