**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

———————

No. 98-50303

———————

SOUTHWEST LIVESTOCK AND TRUCKING COMPANY, INC.;
DARREL HARGROVE;  MARY JANE HARGROVE,

Plaintiffs-Appellees,

versus

REGINALDO RAMÓN,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

March 24, 1999

Before EMILIO M. GARZA, BENAVIDES, and DENNIS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendant-Appellant, Reginaldo Ramón, appeals the district court's grant of summary judgment in favor of Plaintiffs-Appellees, Southwest Livestock & Trucking Co., Inc., Darrel Hargrove and Mary Jane Hargrove.  Ramón contends that the district court erred by not recognizing a Mexican judgment, that if recognized would preclude summary judgment against him.  We vacate the district court's summary judgment and remand.

I

Darrel and Mary Jane Hargrove (the "Hargroves") are citizens of the United States and officers of Southwest Livestock & Trucking Co., Inc. ("Southwest Livestock"), a Texas corporation involved in the buying and selling of livestock. In 1990, Southwest Livestock entered into a loan arrangement with Reginaldo Ramón ("Ramón"), a citizen of the Republic of Mexico. Southwest Livestock borrowed $400,000 from Ramón. To accomplish the loan, Southwest Livestock executed a "pagaré"—a Mexican promissory note—payable to Ramón with interest within thirty days. Each month, Southwest Livestock executed a new pagaré to cover the outstanding principal and paid the accrued interest. Over a period of four years, Southwest Livestock made payments towards the principal, but also borrowed additional money from Ramón. In October of 1994, Southwest Livestock defaulted on the loan. With the exception of the last pagaré executed by Southwest Livestock, none of the pagarés contained a stated interest rate. Ramón, however, charged Southwest Livestock interest at a rate of approximately fifty-two percent. The last pagaré stated an interest rate of forty-eight percent, and under its terms, interest continues to accrue until Southwest Livestock pays the outstanding balance in full.

After Southwest Livestock defaulted, Ramón filed a lawsuit in Mexico to collect on the last pagaré. The Mexican court granted judgment in favor of Ramón, and ordered Southwest Livestock to satisfy its debt and to pay interest at forty-eight percent. Southwest Livestock appealed, claiming that Ramón had failed to effect proper service of process, and therefore, the Mexican court lacked personal jurisdiction. The Mexican appellate court rejected this argument and affirmed the judgment in favor of Ramón.

After Ramón filed suit in Mexico, but prior to the entry of the Mexican judgment, Southwest Livestock brought suit in United States District Court, alleging that the loan arrangement violated

Texas usury laws.[1] Southwest Livestock then filed a motion for partial summary judgment, claiming that the undisputed facts established that Ramón charged, received and collected usurious interest in violation of Texas law. Ramón also filed a motion for summary judgment. By then the Mexican court had entered its judgment, and Ramón sought recognition of that judgment. He claimed that, under principles of collateral estoppel and res judicata, the Mexican judgment barred Southwest Livestock's suit. The district court judge referred both motions to a magistrate judge. *See* 28 U.S.C. § 636(b)(1).

The magistrate judge recommended that the district court grant Southwest Livestock's motion for summary judgment as to liability under Texas usury law, and recommended that it hold a trial to determine damages. In reaching her decision, the magistrate judge first addressed whether the Texas Uniform Foreign Country Money-Judgment Recognition Act (the "Texas Recognition Act") required the district court to recognize the Mexican judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 36.001 *et seq.* (West 1998). As the magistrate judge observed, a judgment "that is not refused recognition . . . is conclusive between the parties to the extent that it grants or denies recovery of a sum of money." TEX. CIV. PRAC. & REM. CODE ANN. § 36.004 (West 1998). The magistrate judge concluded that, contrary to Southwest Livestock's position, the Mexican court properly acquired personal jurisdiction over Southwest Livestock, and therefore, lack of jurisdiction could not constitute a basis for nonrecognition. Nonetheless, according to the magistrate judge, "the district court would be well within its discretion in not recognizing the Mexican judgment on the grounds that

---

[1] Southwest Livestock later amended its complaint to include a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *See* 18 U.S.C. § 1961 *et seq.* The district court granted Ramón summary judgment against Southwest Livestock on this claim. Southwest Livestock has not appealed that decision.

it violates the public policy of the state of Texas." Thus, the magistrate judge decided that the Mexican judgment did not bar Southwest Livestock's suit. The magistrate judge then addressed whether the district court should apply Texas or Mexican law to its resolution of Southwest Livestock's usury claim. The magistrate judge concluded that, under Texas choice of law rules, the district court should apply Texas law. Under Texas law, Ramón undisputably charged usurious interest.

The district court adopted the magistrate judge's recommendation, granting Southwest Livestock's motion for summary judgment as to liability under Texas usury law, and denying Ramón's motion for summary judgment. The district court agreed that the Mexican judgment violated Texas public policy, and that Texas law applied. The district court then heard evidence on the question of damages and granted $5,766,356.93 to Southwest Livestock. The district court also ordered that amount to "increase by $1,677.00 for every day after November 17, 1997, until the date this Judgment is signed," and awarded Southwest Livestock post-judgment interest and attorneys' fees. Ramón appealed.

Ramón asks us to reverse the district court's grant of summary judgment in favor of Southwest Livestock. He contends that the district court erred by failing to recognize the Mexican judgment. He also argues that the district court erred by applying Texas law. According to Ramón, the district court should have applied Mexican law because the pagarés executed by Southwest Livestock designated Mexico as the place of payment, and Mexico has the most significant relationship to the loan transaction. Ramón also objects to the district court's continuing charge for usury. Finally, Ramón contends that the district court erred by using a Texas, rather than federal, post-judgment interest rate.

Southwest Livestock asks us to affirm the district court. It concedes that the district court should have used a federal post-judgment interest rate, but refutes Ramón's other arguments. It contends that the district court properly withheld recognition of the Mexican judgment and properly applied Texas law. Additionally, as an alternative ground for upholding the district court's decision not to recognize the Mexican judgment, Southwest Livestock argues that Ramón failed to serve it with proper service of process, and therefore, the Mexican court lacked personal jurisdiction.

II

We must determine first whether the district court properly refused to recognize the Mexican judgment. Our jurisdiction is based on diversity of citizenship. Hence, we must apply Texas law regarding the recognition of foreign country money-judgments. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938) (holding that in a diversity action, a federal court must apply the law of the forum state); *Success Motivation Inst. of Japan, Ltd. v. Success Motivation Inst. Inc.,* 966 F.2d 1007, 1009-10 (5ᵗʰ Cir. 1992) ("*Erie* applies even though some courts have found that these suits necessarily involve relations between the U.S. and foreign governments, and even though some commentators have argued that the enforceability of these judgments in the courts of the United States should be governed by reference to a general rule of federal law.").

Under the Texas Recognition Act, a court must recognize a foreign country judgment assessing money damages unless the judgment debtor establishes one of ten specific grounds for nonrecognition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 36.005 (West 1998);[2] *Dart v. Balaam*,

---

[2]     TEX. CIV. PRAC. & REM. CODE ANN. § 36.005 (West 1998) provides:
(a)  A foreign country judgment is not conclusive if:
    (1)  the judgment was rendered under a system that does not provide an impartial tribunal or procedures compatible with the requirements of due process of law;
    (2)  the foreign country court did not have personal jurisdiction over the defendant;  or

953 S.W.2d 478, 480 (Tex. App.—Fort Worth 1997, no writ) (noting that "[t]he party seeking to avoid recognition has the burden of proving a ground for nonrecognition"). Southwest Livestock contends that it established a ground for nonrecognition. It notes that the Texas Constitution places a six percent interest rate limit on contracts that do not contain a stated interest rate. *See* TEX. CONST. art. XVI, § 11. It also points to a Texas statute that states that usury is against Texas public policy. *See* VERNON'S TEX. CIV. STAT., art. 5069-1C.001 ("All contracts for usury are contrary to public policy"). Thus, according to Southwest Livestock, the Mexican judgment violates Texas public policy, and the district court properly withheld recognition of the judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 36.005(b)(3) (West 1998).

We review the district court's grant of summary judgment *de novo*. *See Ginsberg 1985 Real Estate Partnership v. Cadle Co.*, 39 F.3d 528, 531 (5th Cir. 1994).[3] In reviewing the district court's

(3) the foreign country court did not have jurisdiction over the subject matter.
(b) A foreign country judgment need not be recognized if:
  (1) the defendant in the proceedings in the foreign country court did not receive notice of the proceedings in sufficient time to defend;
  (2) the judgment was obtained by fraud;
  (3) the cause of action on which the judgment is based is repugnant to the public policy of this state;
  (4) the judgment conflicts with another final and conclusive judgment;
  (5) the proceeding in the foreign country court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court;
  (6) in the case of jurisdiction based only on personal service, the foreign country court was a seriously inconvenient forum for the trial of the action; or
  (7) it is established that the foreign country in which the judgment was rendered does not recognize judgments rendered in this state that, but for the fact that they are rendered in this state, conform to the definition of "foreign country judgment."

[3] Reviewing the district court's decision *de novo* might seem to conflict with our opinion in *Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000 (5th Cir. 1990). In that case, we stated that because the Texas Recognition Act gives judges discretion in deciding whether to recognize a foreign judgment on public policy grounds, the district court's decision not to

-6-

decision, we note that the level of contravention of Texas law has "to be high before recognition [can] be denied on public policy grounds." *Hunt v. BP Exploration Co. (Libya) Ltd.*, 492 F. Supp. 885, 900 (N.D. Tex. 1980). The narrowness of the public policy exception reflects a compromise between two axioms—res judicata and fairness to litigants—that underlie our law of recognition of foreign country judgments. *See Ackermann*, 788 F.2d at 842 (noting that "the public policy exception indicates a jurisprudential compromise").

To decide whether the district court erred in refusing to recognize the Mexican judgment on public policy grounds, we consider the plain language of the Texas Recognition Act. *See Schwenke v. State*, 960 S.W.2d 227, 230 (Tex. App.—Corpus Christi 1997, writ denied) ("When interpreting the intent and meaning of a statute, the court focuses on, and will follow, the plain language of the statute unless doing so leads to absurd and unintended consequences."). Section 36.005(b)(3) of the Texas Recognition Act permits the district court not to recognize a foreign country judgment if "*the cause of action* on which the judgment is based is repugnant to the public policy" of Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 36.005(b)(3) (West 1998) (emphasis added). This subsection of the Texas Recognition Act does not refer to the judgment itself, but specifically to the "cause of action on which the judgment is based." Thus, the fact that a judgment offends Texas public policy does not, in and of itself, permit the district court to refuse recognition of that judgment. *See Norkan*

---

recognize a foreign country judgment "can only be set aside upon a clear showing of [an] abuse of that discretion." *Id*. at 1004. *Khreich*, however, did not involve a grant of summary judgment. Moreover, as the Supreme Court has stated, "[l]ittle turns . . . on whether we label review of this particular question abuse of discretion or *de novo*, for an abuse of discretion standard does not mean a mistake of law is beyond appellate correction." *Koon v. United States*, 518 U.S. 81, 100, 116 S. Ct. 2035, 2047, 135 L. Ed. 2d 392, __ (1996); *see also Reading & Bates Constr. Co. v. Baker Energy Resources Corp.*, 976 S.W.2d 702, 708 (Tex. App.—Houston [1ˢᵗ Dist.] 1998, writ denied) (refusing to apply an abuse of discretion standard because "a trial court has no 'discretion' to improperly determine the law or misapply the law to the facts").

*Lodge Co. Ltd. v. Gillum*, 587 F. Supp. 1457, 1461 (N.D. Tex. 1984) (noting that a "judgment may only be attacked in the event that 'the cause of action [on] which the judgment is based is repugnant to the public policy of this state,' not the judgment itself").

In this case, the Mexican judgment was based on an action for collection of a promissory note. This cause of action is not repugnant to Texas public policy. *See*, *e.g.*, *Akin v. Dahl*, 661 S.W.2d 914 (Tex. 1983) (enforcing a suit for the collection of a promissory note). Under the Texas Recognition Act, it is irrelevant that the Mexican judgment itself contravened Texas's public policy against usury. Thus, the plain language of the Texas Recognition Act suggests that the district court erred in refusing to recognize the Mexican judgment.

Southwest Livestock, however, argues that we should not interpret the Texas Recognition Act according to its plain language. Southwest Livestock contends that Texas courts will not enforce rights existing under laws of other jurisdictions when to do so would violate Texas public policy. *See*, *e.g.*, *Larchmont Farms, Inc. v. Parra*, 941 S.W.2d 93, 95 (Tex. 1997) (noting that "the basic rule is that a court need not enforce a foreign law if enforcement would be contrary to Texas public policy"). It believes that the reasoning of the Texas Supreme Court in *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990), requires us to affirm the district court's decision not to recognize the Mexican judgment. In *DeSantis*, the Court refused to apply Florida law to enforce a noncompetition agreement, even though the agreement contained an express choice of Florida law provision, and Florida had a substantial interest in the transaction. The Court concluded that "the law governing enforcement of noncompetition agreements is fundamental policy in Texas, and that to apply the law of another state to determine the enforceability of such an agreement in the circumstances of a case like this would be contrary to that policy." *Id.* at 681. Southwest Livestock argues similarly that the

law governing usury constitutes a fundamental policy in Texas, and that to recognize the Mexican judgment would transgress that policy.

We find that, contrary to Southwest Livestock's argument, *DeSantis* does not support the district court's grant of summary judgment. First, in *DeSantis* the Court refused to enforce an agreement violative of Texas public policy; it did not refuse to recognize a foreign judgment. Recognition and enforcement of a judgment involve separate and distinct inquiries. *See Guinness v. Ward*, 955 F.2d 875, 889 (4th Cir. 1992) (noting the difference between recognizing and enforcing a foreign judgment); *see also* RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 481 cmt. b (1986) (distinguishing between the recognition and enforcement of judgments). Second, unlike in *DeSantis*, where the plaintiff sought to use foreign law offensively to enforce the noncompetition agreement, in this case, Ramón seeks recognition of the Mexican judgment as an affirmative defense to Southwest Livestock's usury claim. Different considerations apply when a party seeks recognition of a foreign judgment for defensive purposes. As Justice Brandeis once stated:

> [T]he company is in a position different from that of a plaintiff who seeks to enforce a cause of action conferred by the laws of another state. The right which it claims should be given effect is set up by way of defense to an asserted liability; and to a defense different considerations apply. A state may, on occasion, decline to enforce a foreign cause of action. In so doing, it merely denies a remedy leaving unimpaired the plaintiff's substantive right, so that he is free to enforce it elsewhere. But to refuse to give effect to a substantive defense under the applicable law of another state, as under the circumstances here presented, subjects the defendant to irremediable liability. This may not be done.

*Bradford Elec. Light Co. v. Clapper*, 286 U.S. 145, 160, 52 S. Ct. 571, 576, 76 L. Ed. 1026, __ (1932); *cf. Resource Sav. Assoc. v. Neary*, 782 S.W.2d 897, 900 (Tex. App.—Dallas 1989, writ denied) (noting that because a party sought recognition of a foreign judgment for defensive purposes different considerations applied, but refusing to recognize the foreign judgment nonetheless). Third,

*DeSantis* involved a noncompetition agreement, and as we have explained elsewhere, "noncompetition agreements implicate an arguably stronger Texas public policy than usurious contracts." *Admiral Ins. Co. v. Brinkcraft Dev.*, 921 F.2d 591, 594 (5th Cir. 1991).

We find our decision in *Woods-Tucker Leasing Corp. v. Hutcheson-Ingram Development Co.*, 642 F.2d 744 (5th Cir. 1981), more helpful than *DeSantis*.[4] In *Woods-Tucker,* we considered "whether a bankruptcy court sitting in Texas should honor a party contractual choice of Mississippi law in determining whether to apply the Texas or Mississippi usury statute to a transaction . . . between a Texas partnership and a Mississippi-headquartered corporate subsidiary of a Georgia corporation." *Id.* at 745. In deciding to honor the parties' choice of Mississippi law, we noted that applying Mississippi law did not offend any Texas fundamental public policy:

> To be sure, it is the underlying policy of each state's usury laws to protect necessitous borrowers within its borders. Yet, as we have noted, we have found no Texas cases that have invalidated a party choice of law on grounds that the application of a foreign usury statute would violate public policy.

*Id.* at 753 n.13. We also relied on the Supreme Court's decision in *Seeman v. Philadelphia Warehouse Co.*, 274 U.S. 403, 47 S. Ct. 626, 71 L. Ed. 1123 (1927). In *Seeman*, the Supreme Court emphasized its policy of "upholding contractual obligations assumed in good faith." It stated that, although parties may not willfully evade otherwise applicable usury laws by "entering into [a] contract . . . [that] has no normal relation to the transaction," if the rate of interest "allowed by the laws of the place of performance is higher than that permitted at the place of the contract," the parties may

---

4      We acknowledge that *Woods-Tucker* involves a sister state judgment, which distinguishes it from this case. *See Reading & Bates Constr. Co. v. Baker Energy Resources Corp.*, 976 S.W.2d 702, 714 (Tex. App.—Houston [1st Dist.] 1998, writ denied) ("Giving full faith and credit to the judgment of a sister state is vastly different than according it to a foreign country judgment."). Nevertheless, we find the decision in *Woods-Tucker* informative.

contract for a higher rate of interest without incurring the penalties of usury. *Id.* at 407-08; *see also Admiral Ins.*, 921 F.2d at 593-94 (analyzing *Woods-Tucker* and *Seeman*). *Woods-Tucker*, and its reliance on *Seeman*, indicates that, although Texas has a strong public policy against usury, this policy is not inviolable.

We are especially reluctant to conclude that recognizing the Mexican judgment offends Texas public policy under the circumstances of this case. The purpose behind Texas usury laws is to protect unsophisticated borrowers from unscrupulous lenders. *See Woods-Tucker*, 642 F.2d at 753 n.13 ("[I]t is the underlying policy of each state's usury laws to protect necessitous borrowers within its borders"); *see also Moore v. Lambert*, 272 Ark. 324 (1981) ("As far as we know, usury laws exist in all states. Such laws are based upon a universally recognized public policy that protects necessitous borrowers from the exaction of exorbitant interest from unscrupulous lenders."). This case, however, does not involve the victimizing of a naive consumer. Southwest Livestock is managed by sophisticated and knowledgeable people with experience in business. Additionally, the evidence in the record does not suggest that Ramón misled or deceived Southwest Livestock. Southwest Livestock and Ramón negotiated the loan in good faith and at arms length. In short, both parties fully appreciated the nature of the loan transaction and their respective contractual obligations.

Accordingly, in light of the plain language of the Texas Recognition Act, and after consideration of our decision in *Woods-Tucker* and the purpose behind Texas public policy against usury, we hold that Texas's public policy does not justify withholding recognition of the Mexican judgment. The district court erred in deciding otherwise.[5]

---

[5] Southwest Livestock argues that, even if the district court erred by misapplying the public policy exception to the recognition of foreign country judgments, we should still affirm the district court's decision because Ramón failed to effect proper service of process in accordance with

III

For the foregoing reasons, we VACATE the district court's summary judgment, and REMAND for further proceedings.

the Inter-American Convention on Letters Rogatory (the "Convention"). *See* Inter-American Convention on Letters Rogatory, Jan. 30, 1975, S. TREATY DOC. No. 27, 98th Cong., 2d Sess. (1984); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 36.005(a)(2) (West 1998). Ramón served Southwest Livestock through letters rogatory that were transmitted by the Mexican Consul in Del Rio, Texas. Southwest Livestock contends that service of process under the Convention requires active participation by the Central Authority of the destination state, in this case the United States Department of Justice. We disagree. As the magistrate judge explained, Article 13 of the Convention permits service of process through consular channels. Ramón, therefore, effected proper service of process.