**S.A. ANDES, Plaintiff–Appellant,**

**v.**

**VERSANT CORPORATION; First Washington Investments Corporation; Thomas F. Herr, Defendants–Appellees.**

**No. 86–1186.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 5, 1988.

Decided June 27, 1989.

Rehearing and Rehearing En Banc
Denied July 31, 1989.

John Vanderstar (Sonya D. Winner, Covington & Burling, Washington, D.C., on brief), for plaintiff-appellant.

Ralph Werner (Stacy L. Bauer, Michaels & Wishner, P.C., Washington, D.C., on brief), for defendants-appellees.

Before SPROUSE and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

This old case is one of many lives. It founders upon procedural objections raised by the defendants, and no court in the United States has yet addressed anything approaching the merits of the controversy. The last time the case was dismissed by the United States District Court for the District of Maryland it was upon the ground that assertion of secondary liability against a sole stockholder and a related corporation was precluded by an English procedural rule that those alleged to be secondarily liable may not be made parties to an English action to enforce a judgment unless they were parties to the original suit.

The controversy grew out of a loan made by Banque Andes, S.A., a Belgian bank and

the plaintiff's predecessor, to a Panamanian corporation. Repayment of the loan was guaranteed by Versant Corporation, a Delaware corporation with its principal place of business in Maryland.

After default, the plaintiff filed an action in the United States District Court for the District of Maryland against the maker of the note. The plaintiff joined as defendants Versant, the note's guarantor, Thomas F. Herr, a Maryland architect and real estate developer alleged to be Versant's sole stockholder, and First Washington Investments Corporation, alleged to be a successor in interest to Versant.

The note contained a provision that English law was to govern and that any dispute should be settled in the courts in England.

On the basis of the forum selection clause, the district court entered summary judgment for the defendants. It rejected a claim that the forum selection clause applied only to the lender and the maker of the note and not to Versant, First Washington or Herr. It stipulated that any such defendant that refused to submit to the jurisdiction of an appropriate English court would be estopped from later reliance upon the forum selection clause as a bar to any subsequent action in the United States District Court for the District of Maryland.

Andes then repaired to the English High Court of Justice, where it obtained a judgment against Versant for $574,188.49. There was no judgment against Herr or First Washington, for neither had been made a party to the English action, although Herr had been an active participant.

Andes then returned to this country where it filed an action in the United States District Court for the District of Maryland to enforce and collect the English judgment. The action was brought under the Maryland Uniform Foreign Money–Judgments Recognition Act. *Md. Cts. & Jud. Proc.Code Ann.* §§ 10–701 to 10–709 (Michie 1984). Joined as defendants were Herr and First Washington, as well as Versant. The action was uncontested by Versant, against which a default judgment was entered, but Herr and First Washington

vigorously defended upon the ground that the fact that they were not made formal parties defendant in the English action precluded any assertion against them of secondary liability.

While the litigation in Maryland was in its pretrial stages, the plaintiff received information that no one from whom it sought collection of its English judgment had any unencumbered assets from which collection of the judgment might be effected. Rather than wasting time and effort to obtain an American judgment against Herr and his wholly owned corporations, Versant and First Washington Investment, each of whom appeared to be judgment proof, the plaintiff moved for a voluntary dismissal without prejudice to renewal of the action if the appearance of assets warranted further collection efforts. The district court denied that motion, but granted the motion of the defendants for dismissal with prejudice.

On appeal by the plaintiff to this court, we affirmed the denial of the plaintiff's motion for a voluntary dismissal without prejudice upon the ground that denial of that motion was within the limits of the district court's discretion. We reversed the dismissal with prejudice upon the ground that the plaintiff had been given no opportunity to be heard in opposition to the motion. *Andes v. Versant Corp.*, 788 F.2d 1033 (4th Cir.1986).

When the parties were thus returned to the district court, the defendants stood upon their position that, except for the entry of a judgment against Versant, further proceedings against the other defendants were barred by the English judgment. Their positions were supported by statements from an English barrister and an English solicitor. They were of the opinion that the question whether Versant's corporate veil might be lifted to reach the assets of the sole stockholder, Herr, was controlled by the law of Delaware, the state of incorporation, though they were of the opinion that the questions of secondary liability of Herr and First Washington Investments were foreclosed because neither had been joined as a defen-

dant in the English action in which the judgment against Versant had been rendered.

Accepting those statements as declarative of English law, the district court was of the opinion that English procedural rules foreclosed further proceedings in the United States. The district court rendered a judgment against Versant based upon the English judgment but gave no consideration to the possibility of collection of that judgment from assets of Herr or First Washington Investment. To have done so seemed to the district court to be giving greater effect to the English judgment than would be given it in England.

It is undisputed that the plaintiff's secondary liability claims against Herr, or the alleged corporate successor, are governed by the law of Delaware, or some other American state. The statement of English law concedes that an English court would look to such law for substantive answers; they simply were of the view that an English court would never reach the question because of the English procedural rule of preclusion. That was the view taken by the district judge; he could not reach or consider the substantive questions of American law because of the English rule of preclusion. In that we think there was error.

■ The Full Faith and Credit Clause of Article IV § 1 of the Constitution of the United States does not apply to foreign judgments. Maryland, however, has adopted the Uniform Foreign Money–Judgments Act, § 10–701, *et seq.* Under that statute, with many exceptions and conditions, a foreign judgment for the payment of money "is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit." § 10–703. The antecedent of this is certainly the Full Faith and Credit Clause, but the primary purpose of the Maryland legislature in enacting the statute was to make uniform its law on the effect to be given a foreign money judgment. *See id.* § 10–708. In the Commissioner's Prefatory Note to the Uniform Act it is stated that the Act makes clear that a court is privi-

leged to give the judgment of a foreign country greater effect than it is required to do by the Act. 13 *Uniform Laws Ann.* 269. The Act requires the Maryland courts to give a foreign money judgment no lesser effect than it would have in the rendering nation; it does not restrict a Maryland court from giving greater effect to a foreign nation judgment, and it would be expected to do so when giving it greater effect would be consistent with generally accepted notions of American substantive law. *See also Wolff v. Wolff,* 40 Md.App. 168, 389 A.2d 413 (Md.Ct.Spec.App.1978), *aff'd* 285 Md. 185, 401 A.2d 479 (1979).

■ Here, no one seeks to relitigate the bank's claim against Versant or to inquire into anything actually adjudged by the English court. The substantive inquiry is to the potential secondary liability of parties who might have been joined as defendants in the English action and whose joining might have been of some service to convenience had it then been known that Versant would not satisfy the judgment against it. What is involved is the effect in a court of the United States of an English rule of preclusion that has no known counterpart in American law.

When dealing with the preclusive effect of a foreign nation money judgment, some courts have seemed to employ a strict full faith and credit approach, while others have employed the *res judicata* rules of the forum state. Still others have sought to develop special rules that would best serve the interests of the parties, and those of the courts of the foreign nation and of the relevant American jurisdiction. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4473 at 745–47 (1981).

The problem can arise in such a variety of circumstances that, upon a given occasion, any of the three approaches may be the best. But that suggests that in every case, the choice should be made after consideration of the precise issue involved and the effect of alternative resolutions upon the courts of the foreign nation and those of the enforcing jurisdiction. That approach would also give substantial weight

to the interest of the parties in the efficient conduct of litigation without unnecessary waste or delay.

In this case, the English rule of preclusion that a claim of secondary liability may not be prosecuted against one who has not been made a party to the litigation against the primary obligor serves no obvious purpose, whether viewed through English or American eyes. Strictly enforced, it can cut off litigation by the unwary, but once the rule is clearly established, the prudent claimant will join in the original action all parties with known potential secondary liabilities. The result may be the premature litigation of questions of secondary liability when the outcome has little practical meaning to the parties. That would place an unnecessary burden upon the English courts. If, on the other hand, the creditor is permitted to obtain its judgment against the primary obligor without regard to potential questions of secondary liabilities, the entire dispute may be avoided by payment or by the appearance of worthlessness of the claims of secondary liabilities. In either of those events, the interests of all courts and all parties is served. On the other hand, if the question of secondary liability is litigated only after the appearance of its practical importance, that claim may be considered without the diversion of the primary claim over which the parties became disputants in the first place.

In this case in the diversity jurisdiction, we must look for governance to the law of Maryland. Unfortunately, the appellate courts of that state have not considered the effect in that state of this English rule of preclusion. The question seems unworthy of certification, however, for it seems plain that, in the circumstances of this case, the English rule of preclusion would be given no effect in Maryland.

The English rule of preclusion has no bearing upon the liability of Versant. That was adjudicated in England, and that judgment has now been accepted. What remains in dispute are problems connected solely with attempts to collect that judgment. Frustrated in its effort to collect the judgment from the judgment debtor Versant, the bank seeks to collect its judgment from other entities under theories of American law that would be controlling, even in England, if an English court ever got to the substantive questions.

Since the bank joined Herr and First Washington as defendants in its original action against Versant, it may have then suspected that Herr was using Versant as a financially empty front for his own business, but such things may be entirely unknown or unsuspected until after attempts to collect from the judgment debtor have proven unavailing. Indeed, if assets are being shuffled from one entity to another for the purpose of hindrance of creditors, the fact is unlikely to be known until a judgment creditor finds it impossible to collect its judgment from its primary debtor. Fraudulent conveyances do not advertise their true character, and the need to look to related entities for the collection of one's debt is unlikely to be known or fully appreciated until after a judgment has been obtained against the primary obligor and attempts to collect the judgment have proven futile.

Maryland would recognize that it is an impractical burden to cast upon creditors an obligation of full exploration of all problems of collectibility before obtaining a judgment against a primary obligor. It is time enough to send parties off to explore problems of collectibility from related entities after a judgment against the primary obligor has been obtained and proven to be uncollectible by direct proceedings against that obligor. Indeed, this English rule of preclusion is so much at odds with normal American notions of litigation that no American jurisdiction would readily embrace it.

We conclude that Maryland would not permit the English rule of preclusion to forestall the normal processing of collectibility attempts in accordance with generally accepted notions of American law or, more particularly, the law of the forum American state.

We see no other constitutional hindrance to pursuit of the plaintiff's claims. Herr was not a formal party to the English

action, but he was the president of Versant and very active in the conduct of the English litigation. He was fully informed of everything that occurred in the English court.

Now, perhaps we may also have come full circle. The bank wishes this action held in abeyance because it has found no unencumbered assets of Herr or First Washington Investments out of which it might collect its judgment. It now prefers to wait until there appears to be something to be gained, in a legal sense, from further litigation. The defendants, on the other hand, insist they are entitled to final judgment now, foreclosing all future attempts to collect the English judgment out of assets of Herr or First Washington Investments. Upon reconsideration, the district court may conclude that the interests of justice may be served by holding the entire proceeding in abeyance. If the district court concludes that the case should go forward, however, further proceedings should be on the merits without any interference from the English rule of preclusion.

*REVERSED AND REMANDED.*