# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

September 9, 2014

Lyle W. Cayce
Clerk

No. 13-60904

TILL S. DERR; KAI DERR; KATJA DERR; MARGRET DERR,

Plaintiffs–Appellants,

v.

THOMAS L. SWAREK; THOMAS ANTHONY SWAREK

Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi

Before DAVIS, SMITH, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Thomas L. Swarek and Thomas Anthony Swarek ("the Swareks") sued Herman Derr ("Derr") and Derr Plantation, Inc. ("DPI") in the Chancery Court of Issaquena County, Mississippi ("Chancery Court"), alleging that Derr and his corporation breached a contract for the sale of Mississippi farmland. Derr died while the action was pending and, after years of stagnation in the Chancery Court, Derr's wife and children—Till, Kai, Katja, and Margret Derr ("Derr Heirs" or "Heirs")—sued the Swareks in the German Regional Court in Dusseldorf, Germany, seeking a declaratory judgment that they were not liable for any claims arising from the putative land contract. After the initiation of the German lawsuit but before the decision of the Regional Court, the Swareks

dismissed all of their claims against Derr with prejudice and withdrew a pending motion to substitute the Derr Heirs in the Mississippi action. The German Regional Court dismissed the Derr Heirs' claim but the German Higher Regional Court reversed. The German appellate court granted the Derr Heirs a declaratory judgment of non-liability and assessed the Swareks, as the losing party, nearly $300,000 in court costs. The Derr Heirs returned to Mississippi and attempted to enforce the German order for costs in federal district court. The district court refused to recognize the German judgment and the Derr Heirs appealed. For the reasons that follow, we affirm.

## FACTS AND PROCEEDINGS

In February of 2005, the Swareks made an offer to DPI, a Mississippi corporation, and Derr, one of its principals, to lease and then purchase a large plot of farmland owned by DPI in Issaquena County, Mississippi. On February 15, 2005, the Swareks met with Derr in Germany and the parties signed a "Lease/Buy/Sell" agreement—Derr in both his corporate and individual capacities—that the Swareks contend constituted a binding contract for the lease and sale of the farmland. On March 1, 2005, the Swareks filed a complaint and lis pendens notice in the Chancery Court of Issaquena County against DPI and Derr alleging breach of the agreement and seeking specific performance and compensatory and punitive damages in the amount of $6,675,000. DPI filed an answer and counterclaim, and Derr moved to dismiss for lack of personal jurisdiction.

Derr passed away in February of 2006. His counsel filed a suggestion of death on May 12, 2006, and the Swareks moved to substitute his estate on June 6, 2006. On DPI's motion, the case was stayed on June 4, 2008, until DPI's interlocutory appeal challenging the decision of the Chancery Court to transfer venue to the Circuit Court of Issaquena County could be resolved. On

March 9, 2009, while the Mississippi litigation was stayed, the Derr Heirs filed a complaint in German Regional Court against the Swareks seeking a declaratory judgment that the Swareks had no claims against them arising from the Lease/Buy/Sell agreement signed by Derr. According to the complaint in the German action, Till Derr and Kai Derr, through a German parent corporation, became the sole shareholders of DPI.

On November 2, 2009, the Swareks filed a second motion to substitute with the Chancery Court, seeking to replace the estate of Herman Derr with the Derr Heirs. The same day, a supplemental motion to dismiss for lack of personal jurisdiction was filed on Derr's behalf. On May 10, 2010, the Swareks voluntarily dismissed with prejudice all of their claims against Derr in the Mississippi action and withdrew both of their still-pending motions to substitute for Derr his estate and the Derr Heirs.[1]

On August 31, 2010, the German Regional Court dismissed the Derr Heirs' complaint for a declaratory judgment of non-liability. The Regional Court found that because the action in the Mississippi Chancery Court addressed the Heirs' claims and must be recognized in Germany, the Heirs "lack[ed] the required legitimate interest in a declaratory judgment, but in any event lack[ed] the need for legal protection." On appeal, the German Higher Regional Court reversed and awarded the Derr Heirs almost $300,000 in court costs as the prevailing party. The Higher Regional Court found that a declaratory judgment of non-liability was necessary because the Swareks' dismissal of their claims against Derr "constitute[d] a unilateral statement," which would not extinguish their claims under German law and which did not "provide the same legal protection as results from a negative declaratory cross-

---

[1] The Swareks' claims against DPI have had a long shelf life. The trial in the Mississippi litigation concluded in September of 2013 and is pending decision by the chancellor.

action." The Higher Regional Court further held that the question of whether res judicata applied to the Swareks' voluntary dismissal of their claims with prejudice against Derr in the Chancery Court could "remain open" because if the Swareks were to file another action against the Derr Heirs, the Heirs would be required to prove that res judicata barred the claim.

The Derr Heirs filed suit in federal district court to enforce the German judgment for costs. The district court refused to grant comity to the judgment of the German Higher Regional Court and granted the Swareks' motion for judgment on the pleadings. The court found that the Derr Heirs' liability had already been resolved by the Swareks' dismissal with prejudice in the Chancery Court and, even if the dismissal was not effective, the purpose of the German litigation was to interfere with the Mississippi proceedings and the resulting judgment should not be enforced.

## STANDARD OF REVIEW

"This Court reviews a district court's grant of judgment on the pleadings under Rule 12(c) *de novo*." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The question on appeal is whether the district court properly denied enforcement of the German judgment for costs. A court's decision to grant or deny comity is reviewed for abuse of discretion. *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1042 (5th Cir. 2012).[2] Because federal jurisdiction was invoked by

---

[2] Recent cases of this circuit have stated unequivocally that a district court's comity decision is subject to abuse-of-discretion review. *See, e.g.*, *Anderson Tully Lumber Co. v. Int'l Forest Prods., S.r.L.*, 306 F. App'x 858, 859 (5th Cir. 2009); *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV*, 347 F.3d 589, 593 (5th Cir. 2003). But previous sessions of this court have not been in such harmonious agreement. *Compare Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1004 (5th Cir. 1990) (reviewing comity determination for abuse of discretion), *with Sw. Livestock & Trucking Co. v. Ramon*, 169 F.3d 317, 321 (5th Cir. 1999) (applying de novo review to comity decision); *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1148 (5th Cir. 1990) (same). Because Mississippi law entrusts the comity decision to the discretion of the trial judge, *Greater Canton Ford Mercury Inc. v. Ables*, 948 So. 2d 417, 425 (Miss. 2007), we follow recent precedent and review the district court's decision for abuse of discretion. In any event, as

way of diversity of citizenship, we apply Mississippi law governing the recognition of foreign judgments. *See Khreich*, 915 at 1000 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

## DISCUSSION

The district court refused to extend comity to the German judgment on two independent grounds. The court first ruled that the German judgment was unnecessary because the issue of the Derr Heirs' liability under the Lease/Buy/Sell agreement had already been determined by the Swareks' dismissal with prejudice of their claims against Derr. The court then held that even if the Swareks' dismissal of claims against Derr did not preclude them from bringing a future action against the Derr Heirs, the Heirs' purpose in initiating the German lawsuit was to interfere with the Mississippi litigation and the German Higher Regional Court should have left the issue to be resolved in the Chancery Court.[3]

Filing a mirror-image lawsuit in a foreign court while domestic litigation is pending is not sufficient, on its own, to preclude recognition of a foreign judgment, and the district court erred in denying comity on this ground. But

---

this court has noted in reviewing comity judgments, "little turns on whether we label review of this particular question abuse of discretion or de novo, for an abuse of discretion standard does not mean a mistake of law is beyond appellate correction." *Ramon*, 169 F.3d at 321 n.4 (internal quotation marks and alterations omitted).

[3] The Derr Heirs argue that the district court's finding that they intended to interfere with the Chancery Court litigation was inappropriate on a motion for judgment on the pleadings because there was no evidence in the record to support the conclusion, the Heirs were not given an opportunity to respond, and the Swareks did not argue that particular defense. This contention is puzzling because after the Swareks filed a motion for judgment on the pleadings, the Derr Heirs did in fact submit their own motion for summary judgment and a reply to the Swareks' motion. And, as referenced in its order, the district court grounded its findings in the Derr Heirs' complaint in the German Regional Court and the order of the German Higher Regional Court; it did not improperly cull from facts outside of the record. Finally, the Swareks' motion requested non-recognition of the judgment on comity grounds, under which the court placed its interference analysis. Notwithstanding the lack of merit in this objection, the point is moot because we affirm on the grounds that the German Higher Regional Court ignored the Mississippi judgment.

because the Swareks' dismissal of their claims against Derr in the Chancery Court constituted a judgment on the merits under Mississippi law, the Swareks were precluded under the doctrine of res judicata from re-litigating those claims against Derr or his privies, the Derr Heirs.  The German court's refusal to recognize, or even consider, the Mississippi judgment that protected the Derr Heirs from any liability arising from the Lease/Buy/Sell agreement resulted in a superfluous declaration of non-liability that the Heirs had already secured in Mississippi.  As the German declaratory judgment and attendant cost award issued only because the German court ignored the res judicata effect of the Swareks' dismissal with prejudice, the district court did not abuse its discretion in refusing to extend comity to the judgment.

**I.    The mere initiation of a foreign parallel proceeding is not a ground upon which a court may refuse to enforce the resulting foreign judgment.**

Judgments of a foreign country, unlike judgments of a sister state, are not entitled to the protection of full faith and credit under Article IV, Section 1 of the United States Constitution, but are enforced on the basis of comity. *Khreich*, 915 F.2d at 1004.  Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895).  Mississippi courts enforce foreign judgments "not as a matter of obligation but out of deference and mutual respect." *Ables*, 948 So. 2d at 425.

In determining whether a foreign judgment is deserving of recognition, the Mississippi Supreme Court receives guidance from the Restatement (Second) of Conflict of Laws § 98. *See Laskosky v. Laskosky*, 504 So. 2d 726,

729 (Miss. 1987).  The Restatement provides that a foreign judgment rendered by a court of competent jurisdiction will be enforced if

> there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it is sitting, or fraud in procuring the judgment . . . .

Restatement (Second) of Conflict of Laws § 98(c) (1971) (quoting *Hilton*, 159 U.S. at 202).  The Restatement references a number of enumerated defenses that can be asserted to oppose the enforcement of a foreign judgment.  *See id.* § 98 cmt. g.[4]  Mississippi courts will also refuse to apply comity "when its application would render meaningless substantial rights of the non-moving

---

[4] Likewise, Restatement (Third) of Foreign Relations Law of the United States § 482 lists seven grounds upon which a court may refuse to recognize an otherwise valid foreign judgment. That Restatement provides, in relevant part:

> (2) A court in the United States need not recognize a judgment of the court of a foreign state if:
>
> > (a) the court that rendered the judgment did not have jurisdiction of the subject matter of the action;
> >
> > (b) the defendant did not receive notice of the proceedings in sufficient time to enable him to defend;
> >
> > (c) the judgment was obtained by fraud;
> >
> > (d) the cause of action on which the judgment was based, or the judgment itself, is repugnant to the public policy of the United States or of the State where recognition is sought;
> >
> > (e) the judgment conflicts with another final judgment that is entitled to recognition; or
> >
> > (f) the proceeding in the foreign court was contrary to an agreement between the parties to submit the controversy on which the judgment is based to another forum.

Restatement (Third) of Foreign Relations Law of the United States § 482(2) (1987).

party," or "when the substantive law of the foreign jurisdiction is unknown or not reasonably predictable." *Harrison*, 700 So. 2d 247, 250 (Miss. 1997).

Although comity is not an "absolute obligation," it is more than "mere courtesy and good will." *Hilton*, 159 U.S. at 163-64. If an otherwise valid judgment is rendered in a foreign court, the merits of the case will not be re-litigated if "there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect." *Id.* at 202-03; *see also Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 440 (3rd Cir. 1971) ("Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect."). Because the exceptions to recognition of a valid foreign judgment are limited, the first question we must answer is whether the initiation of a parallel foreign lawsuit, without more, justifies declining comity to the resulting foreign judgment. It does not.

The district court, relying on *Laker Airways, Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909 (D.C. Cir. 1984), held that because the purpose of the German litigation was to interfere with the Mississippi action, the German court should have deferred to the first-filed Chancery Court action. In *Laker Airways*, Laker, a British airliner, brought an antitrust suit under American law in the U.S. District Court for the District of Columbia against foreign and domestic defendants. Some of the foreign defendants sought and obtained an injunction from the United Kingdom's High Court of Justice prohibiting Laker from pursuing its antitrust claims in the United States court. *Id.* at 917-18. The district court then granted Laker's motion for an injunction preventing the United States defendants and two foreign defendants from obtaining the same relief in the British court. *Id.* at 918-19. The court of appeals upheld the

district court's anti-suit injunction issued to protect its jurisdiction over Laker's claims. *Id.* at 930-31.

The *Laker* court, however, made clear that "parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." *Id.* at 926-27. It distinguished the usual case of permissible parallel proceedings from the case at issue, finding it was "not a situation where two courts are proceeding to separate judgments simultaneously under one cause of action. Rather, the sole purpose of the English proceeding is to *terminate* the American action." *Laker Airways*, 731 F.2d at 930. Here, the German litigation did not strip the Mississippi Chancery Court of jurisdiction over the Swareks' claims. Both cases were free to proceed to resolution until the judgment of one court could be used to put an end to the duplicative litigation in the other. *See Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1212-13 (D.C. Cir. 1989) (a foreign ruling that defeats a plaintiff's claims in domestic litigation is not a threat to the *jurisdiction* of the domestic court).

But even if the Swareks could have enjoined the Derr Heirs from litigating their declaratory judgment action in Germany, they did not seek to do so.[5] The Swareks point to no authority holding that the relevant

---

[5] Had the Swareks moved for an anti-suit injunction, there is authority indicating that it would have been granted. *See Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A.*, 804 So. 2d 1000, 1006 (Miss. 2001) ("[W]here two suits between the same parties over the same controversy are brought in courts of concurrent jurisdiction, the court which first acquires jurisdiction retains jurisdiction over the whole controversy to the exclusion or abatement of the second suit." (internal quotation marks omitted)). The same would be true if the Chancery Court looked to this court's precedent. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996) (anti-suit injunction may issue when "allowing simultaneous prosecution of the same action in a foreign forum thousands of miles away would result in inequitable hardship and tend to frustrate and delay the speedy and efficient determination of the cause." (internal quotation marks omitted)).

considerations in enjoining parallel litigation are identical to those in recognizing a foreign judgment that has resulted *after* the foreign proceeding has been allowed to unfold. And it is clear that they are not. *See Laker Airways*, 731 F.2d at 928-29 ("[T]he possibility of an 'embarrassing race to judgment' or potentially inconsistent adjudications does not outweigh the respect and deference owed to independent foreign proceedings. The parallel proceeding rule applies only until a judgment is reached in one of the actions." (footnotes omitted)). Even if the Derr Heirs instituted their declaratory suit in Germany for the purpose of obtaining a judgment before one could be reached in the Mississippi litigation, this "interference," in the absence of a final judgment in the Chancery Court, does not fit within one of the narrow exceptions permitting a court to refuse comity to a valid foreign judgment. Accordingly, the district court's anti-injunction analysis cannot support its refusal to recognize the German judgment.

## II. The Swareks' unilateral dismissal with prejudice in the Mississippi litigation was a final judgment on the merits invoking a res judicata bar to re-asserting the dismissed claims against the Derr Heirs.

To uphold the district court's refusal to recognize the German judgment, then, the Swareks' dismissal with prejudice of their claims against Derr in the Mississippi Chancery Court must have constituted a judgment barring a subsequent suit on the same claims against the Derr Heirs. The Swareks contend, as they did in the German Higher Regional Court, that their voluntary dismissal with prejudice pursuant to Miss. R. Civ. P. 41(a)(1)(i)[6] was

---

[6] The Swareks assert in their brief that they voluntarily dismissed all of their claims against Derr "pursuant to Miss. R. Civ. P. 41(a)(2)." This statement appears to be in error. Miss. R. Civ. P. 41(a)(2) provides for voluntary dismissal *by order of the court*. The Swareks argued in the district court that they unilaterally dismissed their claims with prejudice pursuant to Miss. R. Civ. P. 41(a)(1)(i). Likewise, their "Notice of Voluntary Dismissal" in the Chancery Court stated only that they were dismissing the claims against Derr with

a "final judgment on the merits" and they were thus foreclosed from re-asserting the same or related claims against Derr, or his privies, the Derr Heirs in Germany. The Derr Heirs respond that the Chancery Court lacked personal jurisdiction over Derr because he was never properly served, so the Swareks' unilateral dismissal could not have had res judicata effect. *See Turner v. Deutsche Bank Nat'l. Trust Co.*, 65 So. 3d 336, 339 (Miss. Ct. App. 2011) ("The rules on service of process are to be strictly construed. If they have not been complied with, the court is without jurisdiction unless the defendant appears of his own volition." (internal quotation marks omitted)).

"Res judicata is a doctrine of claim preclusion." *Garcino v. Noel*, 100 So. 3d 470, 475 (Miss. Ct. App. 2012). "[W]hen a court of competent jurisdiction adjudicates—that is, enters a final judgment on the merits of an action—the parties or their privies are precluded from re-litigating claims that were decided or could have been raised in that action." *Id.* at 476 (internal quotation marks omitted). "For the bar of res judicata to apply in Mississippi there are four identities which must be present: (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made." *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 232 (Miss. 2005). "[T]he absence of any one of the elements is fatal to the defense of res judicata." *Id.*

At first glance, the Derr Heirs' conclusion that the Swareks' dismissal lacked res judicata effect appears to be compelled by the requirements necessary to invoke the doctrine. A court that lacks jurisdiction over a defendant does not have the authority to address the merits of the case and

---

prejudice and did not request court permission to do so. Because Derr had not filed an answer, the court's imprimatur was not required.

must dismiss the action. *Horne v. Mobile Area Water & Sewer Sys.*, 897 So. 2d 972, 975 (Miss. 2004). "[A] dismissal for want of jurisdiction has no preclusive effect and the same action subsequently may be brought in a court of competent jurisdiction." *Id.* (internal quotation marks omitted). So in the ordinary case, a court's dismissal of claims against a defendant—even if purportedly rendered on the merits—would not bar re-litigation of those claims if the court did not have personal jurisdiction over the defendant.

But here it was not the Chancery Court that dismissed the Swareks' claims against Derr, but the Swareks themselves. Miss. R. Civ. P. 41(a)(1)(i) provides that "an action may be dismissed by the plaintiff *without order of court* . . . by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs." (emphasis added). "Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice." Miss. R. Civ. P. 41(a)(1). Both the Mississippi and Federal rules make explicit that a dismissal, with or without prejudice, is effective without any action of the court. *See* Fed. R. Civ. P. 41(a)(1)(A)(i) ("[T]he plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment . . . .").[7] A plaintiff's dismissal of his claims with prejudice is the "legally operative act of dismissal pursuant to [Federal] Rule 41(a)(1)[(A)])(i)," such that a "district court's subsequent order to the same effect [is] superfluous." *Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 541 (6th Cir. 2001); *see also SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 463 (5th Cir. 2010) ("Any dismissal order entered

---

[7] Mississippi modeled its own Rule 41 after Fed. R. Civ. P. 41, and the Mississippi Supreme Court looks to federal precedent to interpret the state rule. *BellSouth Pers. Commc'ns LLC v. Bd. of Sup'rs of Hinds Cnty.*, 912 So. 2d 436, 440 (Miss. 2005); *Carter v. Clegg*, 557 So. 2d 1187, 1190 n.2 (Miss. 1990).

by a district court after the filing of a voluntary dismissal is 'superfluous.'"). Because the court has no role to play in a Rule 41(a)(1) dismissal, it is of no consequence that the court lacks jurisdiction over the defendant. If the plaintiff chooses to extinguish his rights forever he is entitled to do so, and the defendant will reap the benefit of a res judicata bar to any attempt by the plaintiff to re-litigate the dismissed claims.[8]

That res judicata bars the Swareks' claims against Derr does not end the inquiry into whether the Swareks were foreclosed from re-alleging the same claims in a subsequent action against the Derr Heirs. The Heirs maintain that they were not parties to the Mississippi litigation and, consequently, the Swareks' dismissal had no effect on their potential liability for breach of the purported land contract. But this narrow view ignores that "strict identity of parties is not necessary for either res judicata or collateral estoppel to apply, if it can be shown that a nonparty stands in privity with the party in the prior action." *EMC Mortg. Corp. v. Carmichael*, 17 So. 3d 1087, 1090-91 (Miss. 2009) (internal quotation marks omitted). "[P]rivity is a broad concept, which requires [the court] to look to the surrounding circumstances to determine whether claim preclusion is justified." *Id.* at 1091 (internal quotation marks and alterations omitted). As relevant here, privies are "those who stand in mutual or successive relationship to the same [r]ights of property." *Clement v.*

---

[8] The only court to consider the issue has recently come to the same conclusion. In *Arias v. Napolitano*, No. 13-cv-248, 2014 WL 2987109 (S.D. Ohio July 2, 2014), the plaintiff sought to re-litigate against the same defendant the identical claims he had dismissed with prejudice pursuant to Fed. R. Civ. P. 41(a) in a prior action. *Id.* at *3. The plaintiff argued that his dismissal with prejudice in the previous case did not have res judicata effect because the district court lacked subject matter jurisdiction over the case and thus his dismissal did not operate as a "final decision on the merits by a court of competent jurisdiction" as required to invoke claim preclusion. *Id.* at *2-3. Citing *Warfield*, the district court held that it did not matter whether the prior district court lacked jurisdiction over the defendant because it was plaintiff's voluntary dismissal of his claims with prejudice that was the legally operative act of dismissal under Rule 41(a) fulfilling res judicata's requirement of a "decision on the merits." *Id.* at *3-4.

*R. L. Burns Corp.*, 373 So. 2d 790, 794 (Miss. 1979) (quoting *Lipscomb v. Postell*, 38 Miss. 476, 489 (Miss. Err. & App. 1860)).  It is clear that the Heirs are in privity with Derr.  The alleged purpose of the Heirs' German action was to protect them from the claims filed against Derr in the Mississippi ligation, which would affect them only as successors-in-interest to his property.[9]

Finally, although Derr passed away in 2006, the Chancery Court never acted on Derr's initial motion to dismiss or the Swareks' timely motion to substitute his estate, so the Swareks' claims against Derr were still pending at the time of the Swareks' voluntary dismissal.  *See* Miss. R. Civ. P. 25(a) (upon the death of a party, "[t]he action shall be dismissed without prejudice as to the deceased party *if* the motion for substitution is not made within ninety days after the death is suggested upon the record" (emphasis added)).  Defendants evidently understood this to be the case as they filed a supplemental motion to dismiss on Derr's behalf as late as November of 2009.  It does not matter, then, whether the Derr Heirs were parties to the Mississippi action.  The Swareks dismissed with prejudice their still-pending claims against Derr, which also barred them from later asserting those claims against his privies, the Derr Heirs.

**III.   The district court did not abuse its discretion by refusing comity to the German judgment that resulted from the German Higher Regional Court's own refusal to extend comity to the Mississippi judgment.**

We now address the question of whether the district court abused its discretion by denying comity to the German judgment on the ground that the German Higher Regional Court ignored the Swareks' dismissal with prejudice of the very claims upon which the Derr Heirs sought a declaratory judgment of

---

[9] Because the Derr Heirs do not contest the district court's finding that they are in privity with Derr any such argument is also waived.  *See* Fed. R. App. P. 28(a)(8)(A); *United States v. Ogle*, 415 F.3d 382, 383 (5th Cir. 2005).

non-liability.  As relevant here, Mississippi provides for two exceptions to the general rule that a valid foreign judgment rendered by a foreign court of competent jurisdiction will be enforced domestically.  Mississippi courts will not grant comity where doing so would "render meaningless substantial rights of the non-moving party," *Harrison*, 700 So. 2d at 250, or violate the public policy of the state, Restatement (Second) of Conflict of Laws § 98(g) (recognizing public policy exception).  In this instance, the two inquiries merge. *See C. I. T. Corp. v. Turner*, 248 Miss. 517, 541 (Miss. 1963) ("Public policy and the interest of litigants alike require that there be an end to litigation which, without the doctrine of res judicata, would be endless.").  Res judicata "is a doctrine of public policy designed to avoid the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Little v. V & G Welding Supply, Inc.*, 704 So. 2d 1336, 1337 (Miss. 1997) (quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979)) (internal quotation marks omitted).

The German Higher Regional Court's failure to respect the Swareks' dismissal with prejudice of their claims against Derr—and by the rule of privity, the Derr Heirs—violated Mississippi public policy and rendered meaningless the right of the Swareks to put an end to litigation of their claims.  The German appellate court wholly ignored the res judicata issue, instead finding that the question could "remain open" because there was a possibility that the Swareks could pursue the identical claims against the Derr Heirs under German law in the future, in which case the Heirs would bear the burden of "proving" that the action was foreclosed.  But this reasoning misunderstands the very purpose of according comity to foreign judgments. "[O]nce the parties have had an opportunity to present their cases fully and

15

fairly before a [foreign] court of competent jurisdiction, the results of the litigation process should be final." *Int'l Transactions*, 347 F.3d at 593. The German appellate court's justification for pretermitting the res judicata question and re-litigating the very issues that had been decided in the Mississippi court leaves no place for comity at all. *See Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1521 (11th Cir. 1994) ("While courts regularly permit parallel proceedings in an American court and a foreign court, once a judgment on the merits is reached in one of the cases, . . . failure to defer to the judgment would have serious implications for the concerns of international comity." (internal citation omitted)). And even if, under German law, the Derr Heirs' burden of proving that res judicata prevented a hypothesized future lawsuit from the Swareks justified the issuance of a declaratory judgment, enforcement of the attendant cost award in Mississippi would still violate the state's public policy against superfluous litigation. Whenever a claim is foreclosed by a final judgment, the party invoking res judicata must demonstrate that the doctrine applies. The German Higher Regional Court's "burden of proof" exception permitting re-litigation of claims already decided would, in this case, nullify the defense of res judicata entirely.

The Derr Heirs' corollary argument that the German Higher Regional Court was correct to apply German law and civil procedure to determine the Heirs' liability in Germany similarly misses the mark. Uniformity of laws and procedural rules between the domestic and foreign states is not necessary for a final judgment in one forum to be respected in another. *See Ohno v. Yasuma*, 723 F.3d 984, 1005 (9th Cir. 2013) (The comity determination "focus[es] on the *fundamentals* of the cause of action underlying the foreign judgment . . . not the differences in the bodies of law or in the way in which remedies are afforded." (internal quotation marks omitted); *see also Soc'y of Lloyd's v.*

*Turner*, 303 F.3d 325, 332 (5th Cir. 2002) (same, interpreting Texas law).[10] The defect in the German appellate proceedings was not the Higher Regional Court's application of German law and procedure to rule on the Heirs' claim for a declaratory judgment, but its disregard of the binding dismissal with prejudice in the Mississippi litigation that obviated the need to entertain the duplicative action at all.

The Derr Heirs' final argument is that they were not seeking to enforce the German Higher Regional Court's substantive judgment of non-liability in the Mississippi district court, but only its attendant order for costs. This attempt to separate the cost award from the underlying decision on liability is unpersuasive. German law provides for the award of costs to the prevailing party—the cost award does not exist independently of the underlying judgment. If the Derr Heirs had not obtained a declaratory judgment of non-liability on the identical claims that the Swareks had dismissed with prejudice nearly two years earlier, no order for costs would have issued.

The Swareks' voluntary dismissal with prejudice in the Chancery Court operated as an adjudication on the merits under Mississippi law and thus already provided the Derr Heirs with the judgment of non-liability they were seeking in Germany. Had the German Higher Regional Court recognized the Mississippi judgment, it would have dismissed the Heirs' redundant action— as the German trial court did—and the Swareks would not have been saddled with the costs of the unnecessary litigation. The German Higher Regional Court's decision to sidestep the comity determination and re-adjudicate claims

---

[10] The Derr Heirs' very attempt to enforce the German order for costs in the United States reveals the infirmity of their argument that Mississippi claim preclusion law must be identical to German claim preclusion law to be afforded effect in German court. American law, in most instances, does not award costs to the prevailing party. Yet, as the Heirs point out, cost awards rendered in a foreign court will be recognized in the United States. *See, e.g., Tahan v. Hodgson,* 662 F.2d 862, 867 n.20 (D.C. Cir. 1981); *Somportex,* 453 F.2d at 443.

17

that had already been settled in the Chancery Court violated the Mississippi public policy of res judicata and the Swareks' right to permanently terminate their claims. Comity must be a two-way street. *In re Vitro*, 701 F.3d at 1064. The district court did not abuse its discretion by refusing to enforce the German cost award.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

No. 13-60904

W. EUGENE DAVIS, Circuit Judge, concurring in part and dissenting in part:

I agree with my colleagues in the majority as to the conclusions set forth in Part I of their opinion. One litigant's initiation of a parallel lawsuit in a foreign country while a domestic lawsuit remains pending is not a basis on which a district court may deny comity to the resulting foreign judgment.[1] I disagree, however, with Part III of the majority's opinion. I therefore do not reach the difficult question of first impression under Mississippi law addressed in the majority's Part II.[2]

As explained below, even if the Swareks' voluntary dismissal of their contract claim "with prejudice" under Rule 41 of the Mississippi Rules of Civil

---

[1] *See Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006) ("Generally, concurrent jurisdiction in United States courts and the courts of a foreign sovereign does not result in conflict."); *Gau Shan Co. v. Bankers Trust Co.*, 956 F.2d 1349, 1352 (6th Cir. 1992) ("[P]arallel proceedings on the same *in personam* claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one jurisdiction which can be pled as res judicata in the other." (quoting *Laker Airways, Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926-27 (D.C. Cir. 1984) (alteration omitted))).

[2] In Part II, the majority explains that the Swareks' voluntary dismissal of their lawsuit "with prejudice" under Rule 41 of the Mississippi Rules of Civil Procedure operates as a "final judgment on the merits" and entails claim-preclusive effect under Mississippi law. The majority concludes that this Rule 41 dismissal is entitled to claim-preclusive effect even as to Derr and the Derr Heirs, despite the Swareks' failure to serve Derr and the Derr Heirs with process in the Mississippi proceedings. Neither the litigants nor the court, however, have identified any decisions by Mississippi courts in support of this conclusion. The majority also fails to address *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 502-03 (2001), in which the Supreme Court cautioned that "the term 'judgment on the merits' . . . has come to be applied to some judgments . . . that do *not* pass upon the substantive merits of a claim and hence do *not* (in many jurisdictions) entail claim-preclusive effect." Moreover, even if the Swareks' Rule 41 dismissal does operate as a "judgment on the merits" as to the Swareks themselves, it is not clear that the Swareks' Rule 41 dismissal necessarily entailed claim-preclusive effect as to Derr and the Derr Heirs absent effective service of process. As the majority recognizes, after all, claim preclusion results under Mississippi law where a final judgment is rendered by "a court of competent jurisdiction." *Garcino v. Noel*, 100 So. 3d 470, 476 (Miss. Ct. App. 2012). But the Mississippi courts are "without jurisdiction" unless the "rules on service of process . . . have . . . been complied with . . . ." *See Turner v. Deutsche Bank Nat'l Trust Co.*, 65 So. 3d 336, 339 (Miss. Ct. App. 2011). Given my conclusions regarding the issues addressed in Part III of the majority's opinion, however, this difficult question of Mississippi law need not be resolved in this case.

No. 13-60904

Procedure operated as a final judgment as to the Derr Heirs, that final judgment does not conflict with the German court's decision in this case. On the contrary, the German court's decision is in accord with the Swareks' Rule 41 dismissal. That is, the Swareks neither recovered any damages nor received any other remedy on their claim for breach of contract. As for the costs award rendered during the German proceedings, the German court stated explicitly that those costs would have accrued even if the German court had ruled on the basis of res judicata rather than on the substance of the Swareks' underlying contract claim.

Accordingly, there is no conflict between the two purported final judgments in the present case. There is no recognized basis, therefore, on which to deny comity.[3] For these reasons, I respectfully dissent.

I.

The majority explains that Mississippi courts would deny comity to the German judgment because "[t]he German Higher Regional Court's failure to respect the Swareks' dismissal with prejudice . . . violated Mississippi public policy and rendered meaningless the right of the Swareks to put an end to litigation of their claims." In support, the majority cites several general statements by Mississippi courts regarding the importance of the public policies underlying the doctrine of res judicata. The majority identifies no

---

[3] As the majority correctly observes, "'an abuse of discretion standard does not mean a mistake of law is beyond appellate correction.'" *Sw. Livestock & Trucking Co. v. Ramon*, 169 F.3d 317, 321 n.3 (5th Cir. 1999) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)). "'The interpretation of . . . judicial decrees'" is "'traditionally an issue of law.'" *Abbott Labs. v. TorPharm, Inc.*, 503 F.3d 1372, 1382 (Fed. Cir. 2007) (quoting *Schering Corp. v. Illinois Antibiotics Co.*, 62 F.3d 903, 908 (7th Cir. 1995)); *see also Levens v. Ballard*, 255 P.3d 195, 197 (Mont. 2011); *Kannianen v. White*, 788 N.W.2d 340, 342 (N.D. 2010); *Boyd v. Franklin*, 919 So. 2d 1166, 1171 (Ala. 2005) ("'[T]he construction of a judgment is a matter of law . . . .'" (quoting *Sheehan v. Balasic*, 699 A.2d 1036, 1039 n.4 (Conn. App. 1997)); *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 951 (Fed. Cir. 1997) ("[J]udicial rulings, like statutes, are official legal instruments of the sovereign. Generally, all such instruments—whether trial court orders or appellate court mandates—are reviewed de novo on appeal.").

decisions by Mississippi courts, however, that have ever denied comity to a judgment based on a foreign court's "failure to respect" a res judicata decision rendered earlier in time by a Mississippi court. Nor does the majority identify any such decisions by the federal courts. Nor does the majority identify any such decisions by the courts of any other state in the United States.[4]

The majority's "failure to respect" rationale bears some resemblance to a well-recognized exception to the doctrine of comity. This exception is applicable in cases where a foreign judgment "*conflicts* with another final judgment."[5] Certainly, as the Eleventh Circuit explained in one of the cases cited favorably by the majority, "attempts to enforce *conflicting* judgments raise major concerns of international comity."[6] This sensible exception to the doctrine of comity has been codified as statutory law in Texas and many other states under the Uniform Foreign Money-Judgments Recognition Act.[7] This

---

[4] Indeed, some authorities suggest that courts have discretion to enforce the later-in-time judgment. *See Koehler v. Bank of Bermuda Ltd.*, M18-302(CSH), 2004 WL 444101, at *17 (S.D.N.Y. Mar. 10, 2004) ("If . . . there is a conflict between the Arizona judgment and the Bermuda Declaratory Judgment that is material to recognition analysis, the 2001 Bermuda Declaratory Judgment must be preferred over the 1994 Arizona judgment of dismissal because it is latest in time."); *Ambatielos v. Found. Co.*, 116 N.Y.S.2d 641, 648 (N.Y. Sup. Ct. 1952) ("Where, as here, the party against whom enforcement is sought had full opportunity in the second action to argue the binding force of the earlier judgment, there is every reason for applying the [last-in-time] rule to inconsistent judgments rendered by the tribunals of foreign nations."); *see also Byblos Bank Europe, S.A. v. Sekerbank Turk Anonym Syrketi*, 885 N.E.2d 191, 193-94 (N.Y. 2008) ("The last-in-time rule, applicable in resolving conflicting sister state judgments under the Full Faith and Credit Clause of the Constitution . . . need not be mechanically applied when inconsistent foreign country judgments exist." (citations omitted)).

[5] *See* Restatement (Third) of Foreign Relations Law § 482(2)(e) (emphasis added).

[6] *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1521 (11th Cir. 1994) (emphasis added).

[7] *See* Tex. Civ. Prac. & Rem. Code § 36.005(b)(4) ("A foreign country judgment need not be recognized if . . . the judgment conflicts with another final and conclusive judgment . . . ."); *Beluga Chartering B.V. v. Timber S.A.*, 294 S.W.3d 300, 304 n.1 (Tex. App. 2009); *Genujo Lok Beteiligungs GmbH v. Zorn*, 943 A.2d 573, 577 n.5 (Me. 2008); *HCA Health Servs. of Texas, Inc. v. Reddix*, 566 S.E.2d 754, 756 (N.C. App. 2002); *Nadd v. Le Credit Lyonnais, S.A.*, 804 So. 2d 1226, 1231 (Fla. 2001).

exception to the doctrine of comity also comports with the public policy of decisional finality underlying Mississippi's doctrine of res judicata.[8]

It is possible, therefore, that Mississippi's public policy does require denial of enforcement to a foreign judgment that "conflicts" with a final judgment rendered earlier in time[9] by a Mississippi court. Even if this is correct, however, there is no such conflict between the German judgment and the Swareks' Rule 41 dismissal in the present case.

## II.

Roughly three pages of the German Higher Regional Court's ruling address the substantive merits of the Swareks' contract claim against Derr and the Derr Heirs.[10] From this, we can plainly see that the German Higher Regional Court did not conclude that the Swareks' contract claim was extinguished by the Rule 41 dismissal's purported res judicata effect. But the Derr Heirs prevailed nonetheless because, according to the German Higher Regional Court, the Swareks' claim failed on its merits.[11] As the successful parties in the litigation, therefore, the Derr Heirs were awarded costs under § 91(1) of the German Code of Civil Procedure.[12]

---

[8] *See Dep't of Human Servs., State of Miss. v. Shelnut*, 772 So. 2d 1041, 1046 (Miss. 2000); *Little v. V & G Welding Supply, Inc.*, 704 So. 2d 1336, 1337-38 (Miss. 1997).

[9] *But see Byblos Bank*, 885 N.E.2d at 193-94; *Koehler*, 2004 WL 444101, at *17; *Ambatielos*, 116 N.Y.S.2d at 648.

[10] *See* Derr Heirs' Compl., Ex. B, 7-9 (Rec. Doc. 1-3).

[11] *See id.*

[12] *See id.* at 10 ("The decision on the costs is based on § 91 para. 1, sentence 1 of the German Code of Civil Procedure . . . ."); 7 Digest of Commercial Laws of the World § 119:1 ("§ 91(1) The unsuccessful party shall bear the costs of the action, including, but not limited to, compensating the opponent for his or her expenses to such extent as they were necessary for the appropriate prosecution or the defense of his or her rights."); Burkhard Hess & Rudolf Huebner, *Cost and Fee Allocation in German Civil Procedure*, 11 IUS GENTIUM 151, 151, 154-55 (2012) ("Court charges are generally calculated on the basis of the amount in controversy . . . . As the court fees are solely based on the amount in controversy, they do not depend on the efforts actually undertaken by the Court. Neither the length nor the difficulty of the

Had the German Higher Regional Court ruled on the basis of res judicata, the result would have been identical. That is, the Swareks would have recovered no damages nor received any other relief on their contractual claims, and the Derr Heirs would have been awarded costs under German law as the successful parties. Accordingly, even though the German judgment relies on a legal basis that was entirely separate and distinct from Mississippi's doctrine of res judicata, the enforcement of this judgment does not conflict with the res judicata outcome that the Swareks arguably achieved by their Rule 41 dismissal with prejudice.

The absence of any conflict is demonstrated, in particular, by two aspects of the German Higher Regional Court's reasoning. First, as the majority acknowledges, the German Higher Regional Court explicitly pretermitted the applicability of res judicata. In its written opinion, the German Higher Regional Court explained that the question of whether the Swareks' voluntary "withdrawal of the complaint" gave rise to "a procedural preclusion ('res judicata') . . . c[ould] remain open."[13] Logically, if there were an actual conflict between the proposed res judicata outcome of the Rule 41 dismissal and the substantive analysis of the Swareks' contract claim, the German Higher Regional Court could not have pretermitted this obviously dispositive issue. The German Higher Regional Court only had the luxury of leaving the res judicata question "open" because ruling directly on the contract claim would lead to precisely the same result. In much the same way, we see that the German Higher Regional Court also pretermitted the question of whether the

---

proceedings is taken into account. Court fees rise with the amount in controversy on a digressive scale.").

   [13] *See* Derr Heirs' Compl., Ex. B, 7 (Rec. Doc. 1-3).

contract claim was untimely.[14]  Needless to say, of course, our own court often follows the same approach.  Where several alternative arguments point toward a single conclusion, we frequently decide only the dispositive issue and pretermit the remaining questions.[15]

Second, as the German Higher Regional Court also stated explicitly, costs would have accrued even if the doctrine of res judicata had been the basis of the German judgment.  According to the German Higher Regional Court, "[e]ven if" the Swareks' voluntary dismissal had res judicata effect, the Derr Heirs would nonetheless "be required to prove that the res judicata effect extend[ed] to them" in "the event of an action filed against them" and "any ambiguity w[ould] be resolved at their expense."[16]  As this explanation demonstrates, even a result predicated on res judicata would have given rise to costs in the German litigation.  The record presents no reason to think that such costs would not also form the basis for a costs award under § 91(1) of the German Code of Civil Procedure.[17]

---

[14] *See id.* at 9 ("Thus, it can remain open whether the assertion of possible claims may also be barred by the statute of limitations.").

[15] *See, e.g.*, *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 863 n.11 (5th Cir. 2004); *Fina, Inc. v. ARCO*, 200 F.3d 266, 269 (5th Cir. 2000).

[16] *See* Derr Heirs' Compl., Ex. B, 7 (Rec. Doc. 1-3).

[17] *See* 7 Digest of Commercial Laws of the World § 119:1; Hess & Huebner, 11 IUS GENTIUM at 151.  The Swareks have implied that some relationship exists between the failure to apply res judicata and the costs award.  In urging this inference, the Swareks emphasize the fact that the German appellate court awarded costs (after failing to apply res judicata), whereas the German trial court did not award costs.  *Compare* Swareks' Answer and Affirmative Defenses, Ex. 13, 2-5 (Rec. Doc. 6-13), *with* Derr Heirs' Compl., Ex. B, 7 (Rec. Doc. 1-3).  But this inference is incorrect.  As revealed by a comparison of the two German courts' opinions, the difference between their reasoning was unrelated to the doctrine of res judicata.  For its part, the German trial court did not even mention res judicata.  Indeed, the res judicata issue likely was never raised before the German trial court because the Swareks never appeared in those trial proceedings.  The disagreement between the two German courts actually focused solely on the interpretation of Section 256 of the German Code of Civil Procedure, which evidently governs German litigants' right to a declaratory judgment.  *See* 7 Digest of Commercial Laws of the World § 119:1.  The Swareks argued before the German

No. 13-60904

Indeed, as has often been explained by the Second, Sixth, and District of Columbia Circuits, after "a judgment is reached" in one of two "[p]arallel proceedings in the same in personam claim," the first forum's judgment must then be "*pled* as res judicata in the other."[18]  These statements explicitly contemplate at least one more stage of litigation in the second forum even after final judgment has been rendered in the first forum—the post-judgment proceeding in which the parties' arguments regarding res judicata are asserted and considered.  The doctrine of res judicata does not obligate the second forum to forgive the costs that would ordinarily accrue during this post-judgment litigation.  Nor does the doctrine of res judicata obligate the second forum to immediately stop its work sua sponte so that no further litigation costs will accrue against the unsuccessful litigant.

Nor would there seem to be any obligation, in the present case, for the German courts to forgive those costs that had *already* accrued before the Swareks' Rule 41 dismissal.  It is true, as the majority emphasizes, that the German Higher Regional Court decided the Swareks' appeal on January 12, 2012—nearly two years after the Swareks' Rule 41 dismissal occurred on May 10, 2010.  But the Swareks' Rule 41 dismissal also did not occur until more than a year after the Derr Heirs' lawsuit had been filed in the German trial

---

appellate court that the res judicata effect of their Rule 41 dismissal had barred the Derr Heirs from receiving a declaratory judgment under Section 256.  The German appellate court rejected this argument.  Derr Heirs' Compl., Ex. B, 5-7 (Rec. Doc. 1-3) ("There also is no lack of interest in a declaratory judgment on the side of the plaintiffs. . . . The plaintiffs' legitimate interest in legal protection did not terminate with the 'dismissal with prejudice,' namely the withdrawal of the complaint with respect to the deceased Mr. Hermann Derr in the Mississippi lawsuit.").  In any event, this disagreement over German procedural law has no relevance to the task before our court.

[18] *See Royal & Sun Alliance*, 466 F.3d at 92 (emphasis added); *Gau Shan*, 956 F.2d at 1352 (same); *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1213 (D.C. Cir. 1989) (same); *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir. 1987) (same); *Laker Airways*, 731 F.2d at 926-27 (same).

court on March 9, 2009. The majority asserts that the German Higher Regional Court's costs award "rendered meaningless the right of the Swareks to put an end to litigation of their claims." But surely any right to terminate one's claims under Mississippi law does not entail the power to escape the costs that one has *already* accrued during previous or ongoing litigation in a foreign jurisdiction.

I therefore do not understand the majority's conclusion that "[i]f the Derr Heirs had not obtained a declaratory judgment of non-liability on the identical claims that the Swareks had dismissed with prejudice nearly two years earlier, no order for costs would have issued." On the contrary, costs apparently would have accrued anyway during post-judgment litigation when the Rule 41 dismissal was "*pled* as res judicata"[19] in the German forum. Costs may also have accrued during the full year of litigation in the German trial court prior to the Rule 41 dismissal.

Accordingly, as is evident from the written opinion of the German Higher Regional Court, such costs would have been awarded against the Swareks under § 91(1) of the German Code of Civil Procedure "[e]ven if" the Swareks' voluntary dismissal had "cause[d] a procedural preclusion ('res judicata')" in the German proceedings.[20] The German court's award of costs therefore is not in conflict with the purported res judicata effect achieved by the Swareks' Rule 41 dismissal. It is in accord.

### III.

As explained above, even if the Mississippi doctrine of res judicata had been applied in the German court precisely as the Swareks now articulate that

---

[19] *See Royal & Sun Alliance*, 466 F.3d at 92 (emphasis added); *Gau Shan*, 956 F.2d at 1352; *Laker Airways*, 731 F.2d at 926-27.

[20] *See* Derr Heirs' Compl., Ex. B, 7 (Rec. Doc. 1-3).

doctrine, we would still be faced with a German declaratory judgment awarding no damages to the Swareks and awarding costs to the Derr Heirs. Only the reasoning of the declaratory judgment would be different.

At most, therefore, all that can be said is that the German Higher Regional Court did not apply Mississippi law on claim preclusion when it proceeded to analyze the merits of the Swareks' contract claim. This was not necessarily even legal error. There are also courts in the United States that have applied the claim preclusion rules of the enforcement forum rather than those of the rendering forum when faced with enforcing a foreign country's judgment.[21] In any event, even if the German Higher Regional Court's costs award were predicated on a legal error, such error would not affect this case. Under *Hilton v. Guyot*, 159 U.S. 113, 202-03 (1895), the Restatement (Second) of Conflict of Laws § 98, and numerous other federal and state authorities, a foreign court's "error of law" is not a sufficient reason to deny comity to a foreign judgment.[22]

---

[21] *See Andes v. Versant Corp.*, 878 F.2d 147, 149 (4th Cir. 1989) ("When dealing with the preclusive effect of a foreign nation money judgment, some courts have seemed to employ a strict full faith and credit approach, while others have employed the *res judicata* rules of the forum state."); *Panama Processes, S.A. v. Cities Serv. Co.*, 796 P.2d 276, 291-92 & n.70 (Okla. 1990); *see also United States v. Kashamu*, 656 F.3d 679, 683 (7th Cir. 2011) ("There is no consensus."). The situation is different where both the rendering forum and the enforcement forum are bound by the Full Faith and Credit Clause of the United States Constitution. In such circumstances, the enforcement forum is obligated to apply the rendering forum's rules on res judicata. *See id.*

[22] Restatement (Second) of Conflict of Laws § 98 Comment D (1971, rev'd 1988) ("[T]he judgment will not be refused recognition on the ground that the rendering court made an error of law or of fact."); *see also, e.g., de Csepel v. Republic of Hungary*, 714 F.3d 591, 606-07 (D.C. Cir. 2013); *Shakopee Mdewakanton Sioux (Dakota) Gaming Enter. v. Prescott*, 779 N.W.2d 320, 325-27 (Minn. Ct. App. 2010); *Sarl Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474, 479 (2d Cir. 2007); *Dart v. Dart*, 597 N.W.2d 82, 85-86 (Mich. 1999); *Parsons v. Bank Leumi Le-Israel, B.M.*, 565 So. 2d 20, 25 (Ala. 1990); *Panama Processes*, 796 P.2d at 284; *Banco Minero v. Ross*, 172 S.W. 711, 714 (Tex. 1915).

In summary, the majority's interpretation of the public policy exception to the doctrine of comity is unsupported by Mississippi law or by any other authorities identified during these proceedings. This interpretation denies enforcement to a judgment that was evidently rendered by "a court of competent jurisdiction . . . under a system of jurisprudence likely to secure an impartial administration of justice" absent any indication of "prejudice in the court . . . or fraud in procuring the judgment."[23] The majority's interpretation recognizes, apparently for the first time, a broad exception to the doctrine of comity where a foreign court "fail[s] to respect" a res judicata decision rendered earlier in time by a Mississippi court, even where the two resulting judgments are not in conflict with one another.

For these reasons, I would reverse the district court's order granting the Swareks' motion for judgment on the pleadings. Accordingly, I respectfully dissent.

---

[23] *See Hilton*, 159 U.S. at 202.